# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| EPSTEIN CONSTRUCTION, INC., | No. 19-CV-106-CJW-KEM |
| Plaintiff/Counterclaim-Defendant, | |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| MODERN PIPING, INC., | |
| Defendant/Counterclaim-Plaintiff. | |
| _____ | |
| MODERN PIPING, INC., | |
| Third-Party Plaintiff, | |
| vs. | |
| A. EPSTEIN AND SONS INTERNATIONAL, INC., | |
| Third-party Defendant. | |

_____

## TABLE OF CONTENTS

I.  BACKGROUND ............................................................................ 4

II. PLAINTIFF'S MOTION TO STRIKE ................................................ 8

    A.  Applicable Law ................................................................... 8

    B.  Arguments and Analysis ...................................................... 11

        1.  Declaration in its Entirety ............................................ 11

        2.  Paragraph 4 ............................................................... 13

        3.  Paragraphs 5 & 6 ....................................................... 15

        4.     Paragraphs 7 & 8 ............................................................18

III.    PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT ...........21

    A.    Standard ....................................................................................21

    B.    Analysis.....................................................................................24

        1.    Procedural Arguments .....................................................24

            a.    Defendant's Statement of Additional Material Facts ........24

            b.    Use of Expert Testimony.....................................25

        2.    Declaratory Judgment.......................................................26

        3.    Counterclaims .................................................................28

            a.    Fraud ..........................................................28

                i.    Arguments...............................................29

                ii.    Applicable Law..........................................30

                iii.    Application ..............................................32

            b.    Negligent Misrepresentation.....................................34

                i.    Arguments...............................................35

                ii.    Applicable Law..........................................36

                iii.    Application ..............................................37

            c.    Breach of Contract—Scaffolding Reimbursement (Damages Only) .................................................39

2

i.       Arguments ................................................... 40

ii.     Applicable Law ........................................... 41

iii.    Application ................................................. 42

    d.     Professional Negligence ........................................ 51

i.       Arguments ................................................... 51

ii.     Applicable Law ........................................... 52

iii.    Application ................................................. 54

IV.   DEFENDANT'S MOTION ON ORDER OF TRIAL ............................. 58

   A.     Applicable Law ................................................... 58

   B.     Arguments and Analysis ......................................... 59

V.    CONCLUSION ................................................... 60

This matter is before the Court on defendant/counterclaim-plaintiff Modern Piping, Inc.'s ("defendant") Motion for Order of Trial (Doc. 77), plaintiff/counter-defendant Epstein Construction, Inc.'s ("plaintiff") Motion for Summary Judgment (Doc. 79), and plaintiff's Motion to Strike. (Doc. 95). On October 22, 2021, defendant filed its Motion for Order of Trial. (Doc. 77). Plaintiff timely filed a resistance (Doc. 82) and defendant timely filed a reply (Doc. 87). Also on October 22, 2021, plaintiff filed its Partial Motion for Summary Judgment.[1] (Doc. 79). Defendant timely filed a resistance (Doc. 85), and plaintiff timely filed a reply (Doc. 98). On November 19, 2021, plaintiff filed its Motion to Strike. (Doc. 95). Defendant timely filed a resistance (Doc. 100), and plaintiff timely filed a reply (Doc. 101). For the following reasons, plaintiff's Motion to Strike is **denied,** plaintiff's Partial Motion for Summary Judgment is **granted in part and denied in part**, and defendant's Motion for Order of Trial is **granted**.

## I.     BACKGROUND

The following facts are undisputed, unless otherwise noted. When necessary, the Court will later discuss additional facts pertinent to its analysis.[2]

This matter is primarily based on a contract dispute between a general contractor and a subcontractor. Prestage Farms Inc. ("Prestage") hired plaintiff as the general contractor for its design-build agreement. (*See* Doc. 79-3, at 1). As general contractor, plaintiff was responsible for designing and constructing a new pork processing facility

---

[1] Though plaintiff does not refer to its motion as one for partial summary judgment, plaintiff does not move for summary judgment on defendant's quantum meruit or breach of implied contract counterclaim, defendant's unjust enrichment counterclaim, or defendant's breach of contract counterclaim in its entirety. (*See* Doc. 43). Thus, plaintiff's motion is one for partial summary judgment.

[2] The Court will address plaintiff's argument about defendant's Statement of Additional Material Facts (Doc. 98, at 1–2) later in this Order.

(together, the "project") in Eagle Grove, Iowa. Plaintiff was also responsible for subcontracting portions of the project when necessary.

On August 1, 2017, plaintiff sent defendant a bid package for the Building Shell Mechanical ("Shell Mechanical Work") portion of the project. (Docs. 79-1, at 1; 85, at 1). This bid package included a construction progress schedule with a data date of June 27, 2017 ("Baseline Schedule").[3] (Docs. 79-1, at 1 (citing Doc. 79-2, at 3–8 (showing June 27, 2017 data date)); 85, at 1). The Baseline Schedule set out the timeline and sequencing order for various stages and specific projects related to the pork processing facility's construction. (*Id.*). Defendant submitted a bid for the Shell Mechanical Work on September 19, 2017. (Docs. 79-1, at 2; 85, at 1). On October 9, 2017, defendant visited the project site. (Docs. 79-1, at 2; 85, at 2–3).

On October 11, 2017, defendant was awarded the Shell Mechanical Work package. (Docs. 79-1, at 2; 85, at 1–2). That day, the parties entered into a subcontract agreement for the Shell Mechanical Work ("Subcontract"). (Docs. 79-1, at 2–3; 85, at 1–2). The Subcontract included the Baseline Schedule. (Docs. 79-1, at 2–3 (citing 79-3, at 1–171 (Baseline Schedule included at 52–57); 85, at 3)).

On December 4, 2017, defendant commenced the installation portion of the Shell Mechanical Work. (Docs. 79-1, at 3; 85, at 5). Defendant's project manager, Chris Roderick, immediately told plaintiff that the Baseline Schedule did not correspond with

---

[3] The parties use different terms for this schedule, but the Court finds they refer to the same document. Plaintiff refers to the "Bid Schedule," a scheduling graph with a data date of June 27, 2017, which plaintiff included in its request for bids, including that sent to defendant. (Doc. 79, at 2 (citing Doc. 79-2, at 7–12). Defendant refers to this schedule as "Schedule E – Construction Progress Schedule," a scheduling graph also with a data date of June 27, 2017, which plaintiff appended to defendant's Subcontract on October 11, 2017. (Doc. 85-1, at 2 (citing Doc. 79-3, at 2 (referencing Doc. 79-3, at 52–57))). Upon review of the parties' arguments and comparison of the documents, the Court finds both the Bid Schedule and Schedule E refer to the same document. Thus, for clarity and consistency, the Court will use the term "Baseline Schedule" for this document.

the site progress. (Docs. 79-1, at 3; 85, at 5). The parties dispute, however, whether defendant knew the Baseline Schedule was false before commencing installation of the Shell Mechanical Work. (Docs. 79-1, at 4; 85, at 6–7).

That same date, Mr. Roderick wrote to plaintiff stating, among other things: (1) defendant knew the Baseline Schedule was "false in both dates and logic," reminding plaintiff that on October 5, 2017; (2) defendant "made [it] aware that [defendant] had discovered flaws in the [Baseline Schedule]," (3) the Baseline Schedule was not being followed as of defendant's October 9, 2017 site visit, in which plaintiff told defendant to begin the underground work substantially out of sequence, according to the Baseline Schedule; and (4) the Baseline Schedule was "all but abandoned." (Doc. 79-1, at 3–4; 85, at 5–6). Further, Mr. Roderick enclosed an alternative schedule created by defendant based on priorities relayed to it and available information. (Docs. 79-1, at 4; 85, at 6).

On December 8, 2017, Mr. Roderick emailed plaintiff, reiterating his assessment that the Baseline Schedule had "inconsistencies in start/finish dates as well as sequencing, duration, and logic." (Docs. 79-1, at 4; 85, at 12). According to defendant, Mr. Roderick's email also provided notice that defendant was entitled to compensable claims if plaintiff attempted to accelerate the schedule. (Doc. 85, at 6).

According to defendant, it "had incurred millions of dollars in obligations by December 2017 in contracts with subcontractors, vendors, and suppliers, and other costs related to project mobilization." (Doc. 85, at 5). Plaintiff, however, asserts that because defendant had only invoiced plaintiff $224,444.52, including subcontractor invoices, as of the end of December 2017, defendant's exposure was not so high. (Doc. 79-1, at 5).

Defendant was to be paid $14,304,243.00 for the Subcontract. (*Id.*). The Subcontract directed defendant to complete specified projects within a set time designated by the Baseline Schedule. (Doc. 1-2 (Subcontract)). According to the Subcontract language, if defendant was unable to complete the project within the specified time, or if

6

the project was going to exceed budget, defendant was required to notify plaintiff via contractually agreed-upon procedure. (*Id.*, at 11–13). Defendant was also required to support the claim with a factual recitation of the cause and effect of the event and include supporting documentation and an itemized quantification of the damages requested. (*Id.*). Were plaintiff to order changes in the Subcontract Work, the Subcontract instructed plaintiff to follow a similar, but separate, change order process. (*Id.*, at 12–13).

On September 24, 2018, defendant submitted three change order requests. (Docs. 79-1, at 5; 85, at 7–8). Defendant asserts that it had provided adequate notice about project "delays and compensable impacts" before submitting the requests. (Doc. 85, at 7–9). These requests—Change Order Request 23, Change Order Request 24, and Change Order Request 25 (collectively the "Disputed Change Order Requests")—initially asked for an additional $1,461,723.00, $3,866,626.00, and $767,036.00 respectively. (Docs. 79-1, at 5–6; 85, at 8–9). Change Order Request 24, at issue here in defendant's breach of contract counterclaim, was made to cover labor and supervision costs caused by changes in the project schedule. (Docs. 79-1, at 5–6; 85, at 8). The parties agree that plaintiff rejected all the Disputed Change Order Requests, although they dispute the rejection date. (Docs. 79-1, at 6; 85, at 9).

In Change Order Request 24, defendant sought reimbursement for $634,966 in scaffolding expenses, which defendant had paid to its subcontractor, All American Scaffold. (Docs. 79-1, at 6; 85, at 9). Although the parties agree that defendant knew on March 19, 2018, that it would need some amount of scaffolding to complete its work on the project (Docs. 79-1, at 6; 85, at 9), defendant asserts that it did not understand the amount of scaffolding it would require until later in the project and told plaintiff it would be charging the cost. (Doc. 85, at 9–10). The parties dispute the ultimate effect of discussions and communications about the scaffolding and who was responsible for paying for it. (Docs. 79-1, at 6; 85, at 10). Further, defendant's expert report now

identifies $1,229,317.79 in scaffolding costs. (Docs. 79-1, at 7; 85, at 11). The parties dispute plaintiff's knowledge of these additional costs and defendant's project management team's knowledge of the scaffolding (Docs. 79-1, at 7; 85, at 11–13), but agree Change Order Request 24 did not include detailed monthly invoices from All American Scaffold. (Docs. 79-1, at 8; 85, at 13).

On November 2, 2018, defendant informed plaintiff that it was near completion of the Shell Mechanical Work. (Doc. 79-1, at 8; 85, at 14). The parties dispute, however, when defendant completed it. (Docs. 79-1, at 8; 85, at 14).

The parties dispute defendant's duties and obligations under the Subcontract. (Docs. 79-1, at 8–12; 85, at 14–17). Regardless, defendant asserts that plaintiff cannot enforce the terms and conditions of the Subcontract. (Doc. 85, at 15–17).

## II.   *PLAINTIFF'S MOTION TO STRIKE*

Because plaintiff's motion to strike affects the evidence the Court may consider when ruling on plaintiff's Partial Motion for Summary Judgment, the Court first addresses plaintiff's Motion to Strike. (Doc. 95). For the following reasons, the Court denies plaintiff's Motion.

### A.   *Applicable Law*

A court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The party moving for a strike bears the burden to show the Court any reason why the language is redundant, immaterial, or scandalous. *Schmidt v. Hosley Int'l*, No. 4:15-CV-614-CEJ, 2015 WL 4134338, at *2 (E.D. Mo. July 8, 2015). A matter is immaterial or impertinent when it is not relevant to the resolution of the issue at hand. *Kelly v. Ethicon, Inc.*, 511 F. Supp. 3d 939, 953 (N.D. Iowa 2021); *Schmidt*, 2015 WL 4134338, at *2.

8

Even though the court has wide discretion concerning a motion to strike, that motion is "disfavor[ed]" and "infrequently granted." *Holt v. Quality Egg, L.L.C.*, 777 F. Supp. 2d 1160, 1168 (N.D. Iowa 2011). Still, a court should grant it if doing so would simplify "the trial of the action" or streamline "the ultimate resolution of the action." *Kelly*, 511 F. Supp. 3d at 945. Although the Court is skeptical whether a motion to strike can properly address evidentiary issues on summary judgment, it will consider the Motion nonetheless. *Id.*, at 945 n.3. ("[E]videntiary matters submitted in support of . . . a motion for summary judgment are not 'pleadings' within the meaning of Rule 12(f).") (citations omitted).

A party may support a motion for summary judgment by filing an affidavit or declaration that is "made on personal knowledge," sets out "facts that would be admissible in evidence," and shows "that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(1)(A); FED. R. CIV. P. 56(c)(4). The proponent of the evidence has the burden to show that the evidence is admissible as presented, or that an admissible form is anticipated. *Progressive Cas. Ins. Co. v. FDIC*, 80 F. Supp. 3d 923, 934 (N.D. Iowa 2015) (citing *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012)). Thus, at this stage, the test for admissibility is whether a reasonable trier of fact could believe that the witness had personal knowledge, that the declaration set out admissible facts, and that the affiant or declarant was competent to testify.

Affidavits asserting personal knowledge "must include enough factual support to show that the affiant possesses that knowledge." *El Deeb v. University of Minnesota*, 60 F.3d 423, 428 (8th Cir. 1995). An affirmation on "information and belief" is insufficient. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1367 (8th Cir. 1983). Accordingly, personal knowledge "exclude[s] testimony concerning matter the witness did not observe or had no opportunity to observe." *United States v. Lyon*, 567

9

F.2d 777, 783–83 (8th Cir. 1977). A court cannot consider an affidavit lacking personal knowledge when deciding a motion for summary judgment. *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005).

A declarant can also acquire personal knowledge "through review of records prepared in the ordinary course of business, or perceptions based on industry experience." *Burlington N. R.R. Co. v. Nebraska*, 802 F.2d 994, 1004–05 (8th Cir. 1986). A lay witness may also make an opinion in a declaration if that opinion is "rationally based on perception and helpful to a determination of a fact in issue." *Id.* at 1004; FED. R. EVID. 701. When evaluating personal knowledge, a court may look to "the content or context of a statement" in a declaration. *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111–12 (8th Cir. 2005).

But affiants cannot make legal conclusions. *See DePriest v. Milligan*, 823 F.3d 1179, 1188 (8th Cir. 2016). A legal conclusion is the legal result that a court draws "from the facts." *Berger Transfer & Storage v. Cent. States, Se. & Sw. Areas Pension Fund*, 85 F.3d 1374, 1378 (8th Cir. 1996) (internal quotations and citations omitted). Put another way, it merely tells the jury what verdict to reach. *Frye v. Hamilton Cty. Hosp.*, No. 18-CV-3031-CJW-MAR, 2019 WL 2404330, at *7 (N.D. Iowa June 7, 2019). Other courts have treated as a fact a statement about whether a defendant failed to timely perform on a written obligation, because it stems from reviewing the written obligation and its due dates. *See Wilmington Sav. Fund Soc'y, FSB v. Hutchins*, No. CV 18-0346 JCH/JHR, 2020 WL 1910284, at *7–8 (D.N.M. Apr. 20, 2020).

Even if the declarant's statement purportedly has personal knowledge, the Court should not consider it if it is a sham. The statement is a sham "if it contradicts prior testimony or is a sudden and unexplained revision of testimony [that] creates an issue of fact where none existed before." *Button v. Dakota, Minnesota & Eastern R.R. Corp.*, 963 F.3d 824, 830 (8th Cir. 2020). *See also Abuy Develop., L.L.C. v. Yuba Motorsports*,

10

*Inc.*, No. 4:06CV799SNL, 2008 WL 1777412, at *14 n.14 (E.D. Mo. Apr. 16, 2008) (finding a sham declaration). A declarant's contradictory statement must directly contradict his previous statement to be a sham. *Baker v. Silver Oak Senior Living Manag. Co.*, 581 F.3d 684, at 690–91 (8th Cir. 2009) (concluding that contradictory testimony that could be explained by plaintiff's reasonable misinterpretations of questions in a deposition was not a sham issue). A court may be more likely to view a contradictory statement as directly contradictory when the statement is one of pivotal importance in the case. *See, e.g.*, *Estate of Gray ex rel. Gray v. Bladi*, 880 N.W.2d 451, 465 (Iowa 2016). Finally, a sworn document is not a sham when it "merely explains portions of . . . prior [testimony] that may have been unclear." *See Button*, 963 F.3d at 830. When a statement is a sham, the court must disregard it when ruling on summary judgment. *Garang v. City of Ames*, 2 F.4th 1115, 1122 (8th Cir. 2021).[4]

### B. Arguments and Analysis

For the following reasons, the Court denies plaintiff's Motion to Strike Patrick Myers' declaration.

#### 1. Declaration in its Entirety

Plaintiff urges the Court to strike Mr. Myers' declaration in its entirety because of its pervasive speculation. (Doc. 95, at 2). Defendant argues the Court should deny plaintiff's motion based on this pervasive–speculation argument because it is a merits-based argument that is inappropriate for a motion to strike and better suited for summary

---

[4] The Court notes that the Eighth Circuit has instructed district courts to "examine [sham affidavit] issues with extreme care" and advised that only when "the conflicts between the deposition and affidavit raise only sham issues should summary judgment be granted." *Camfield Tires, Inc. v. Micheline Tire Corp.*, 719 F.2d 1361, 1366 (8th Cir. 1983). Such guidance, however, appears when finding that a document is a sham would lead the court to grant summary judgment. *See id.*, *City of St. Joseph, Mo. V. Southwestern Bell* Telephone, 439 F.3d 468, 475–76 (8th Cir. 2006) (following *Camfield Tires*). The Court, however, will "articulate [its analysis] with care" regardless of possible impact on its summary judgment decision. *See Camfield Tires*, 719 F.2d at 1366.

11

judgment. (Doc. 100, at 3). Additionally, defendant argues that the Court should deny plaintiff's motion to strike in full for violating Local Rule 7(k) because plaintiff did not meet and confer with defendant on this non-dispositive motion. (*Id.*, at 100 n.1).

The Court first addresses defendant's Local Rules argument. Local Rule 7(k) requires that the moving party in a non-dispositive motion confer with the nonmoving party, or include a description in its motion of the efforts it made and an explanation why the efforts were unsuccessful. LR 7(k). Plaintiff does not dispute that it violated Local Rule 7(k). (*See* Doc. 101). Given that plaintiff does not dispute that it failed to comply with Local Rule 7(k), the Court could deny its Motion on that reason alone. Nevertheless, the Court will assess the parties' other arguments, both about the declaration in its entirety and certain paragraphs within it.

Here, the parties' arguments turn on whether Mr. Myers has personal knowledge. Essentially, plaintiff argues Mr. Myers lacks personal knowledge and therefore his declaration is inadmissible, and thus improper for summary judgment review. For its part, defendant argues Mr. Myers has personal knowledge, making his declaration admissible, and thus proper for summary judgment review.

The Court finds that it need not strike Mr. Myers' declaration in its entirety. First, the declaration is admissible because a reasonable trier of fact could believe that the witness had personal knowledge, by virtue of his position as defendant's estimating manager, "responsible for helping [defendant] mobilize and prepare for [the] work," and because he reviewed subcontracts and purchase orders related to defendant's investment in the work. (Doc. 92-5, at 2).

Second, the declaration set out admissible facts. Other than questioning Mr. Myers' personal knowledge, plaintiff does not argue that Mr. Myers' declaration is inadmissible. Indeed, plaintiff does not expressly state why the declaration "is redundant, immaterial, or scandalous." *Schmidt*, 2015 WL 4134338, at *2. Instead, plaintiff seems

to imply that the declaration is immaterial or impertinent because Mr. Myers lacks personal knowledge. But the Court has already found that a reasonable fact finder could find Mr. Myers has personal knowledge here. Further, the Court would not otherwise find the declaration immaterial or impertinent because it is relevant to the resolution of the issue of damages. *Kelly.*, 511 F. Supp. 3d at 953; *Schmidt*, 2015 WL 4134338, at *2. Information is relevant when it makes a fact more or less probable and is of consequence in the action. FED. R. EVID. 601. Here, Mr. Myers' declaration makes defendant's damage calculation more or less likely and is of consequence because defendant relies on Mr. Myers' declaration as proof of its damages. Additionally, the Court presumes that Mr. Myers was competent to testify, given that plaintiff does not argue otherwise.

Thus, the Court denies plaintiff's Motion as to Mr. Myers' declaration in its entirety.

### 2. *Paragraph 4*

Paragraph 4 of Mr. Myers' declaration states that "[defendant] committed significant resources to the shell package (the scope of work at issue in this lawsuit) before [defendant] mobilized to the project site on December 4, 2017." (Doc. 92-5, at 25).

Plaintiff argues that the Court should strike Paragraph 4 because it contradicts his deposition testimony.[5] (Doc. 95, at 2–3). Specifically, plaintiff asserts that Mr. Myers'

---

[5] In its Reply, plaintiff also argues that the Court strike Paragraph 4 because it is absurd. (Doc. 101, at 2–3, 2 n.1). This argument, however, is based on plaintiff's assertion that Paragraph 4 conflicts with the terms of defendant's subcontracts and purchase orders. (*See id.*, at 2–3). But plaintiff's argument about Paragraph 4 in its original brief is based on Paragraph 4's conflicts with Mr. Myers' deposition, not defendant's subcontracts and purchase orders. (Doc. 95, at 2–3). Further, defendant's Resistance does not introduce an argument in the context of Paragraph 4 about defendant's subcontracts and purchase Orders to which plaintiff needed to respond.

deposition testimony contradicts his declaration assertion that defendant committed significant resources to the project before beginning the work in December 2017 because he could not remember a specific date between October 16, 2017, and December 16, 2017, when he reviewed the Baseline Schedule, and characterized defendant as "man[ning] up" for the Shell Mechanical Work in December 2017.[6] (*Id.*).

Defendant argues that Paragraph 4 is consistent with Mr. Myers' deposition testimony and therefore is not a sham affidavit. (Doc. 100, at 3–5). Moreover, defendant argues that when Mr. Myers first saw the Baseline Schedule is irrelevant because defendant offers Mr. Myers' declaration as evidence of the efforts that defendant undertook between mid-October 2017 and December 4, 2017, and as evidence of "the various contractual obligations and other costs or obligations" it therefore incurred. (*Id.*, at 4–5). Finally, defendant argues that when Mr. Myers first visited the project is irrelevant because Mr. Myers' role as a project estimator did not require him to visit the site pre-mobilization, meaning any contradiction should go to the weight of Mr. Myers'

---

Thus, plaintiff introduces new argument and information in its Reply that does not respond to a "new and unanticipated argument," and thus, the Court cannot consider it. *See* LR 7(g).

Even if the Court could consider plaintiff's absurdity argument, the Court would find it is without merit. Although the terms of defendant's subcontract and purchase order contracts appear to limit damages and provide defendant certain rights of cancellation, those rights to not preclude defendant from incurring costs as described in Mr. Myers' declaration such that his declaration would be absurd.

Additionally, in its Reply, plaintiff states: "Mr. Myers' declaration is not made in contradiction to deposition testimony[;] it is a Declaration made in the absence of deposition testimony and in contradiction to [defendant's] acknowledged business records." (Doc. 101, at 3). The Court is at a loss on how to reconcile this statement with plaintiff's statement in its brief that "Mr. Myers testimony in Paragraph 4 should be struck because his prior deposition testimony contradicts to [sic] his Declaration." (Doc. 95, at 2). Thus, the Court interprets this as a new argument asserted in plaintiff's Reply, and will not consider it. *See* LR 7(g).

[6] Plaintiff's brief (Doc. 95 at 3) cites to December of 2018. The Court finds this to be a typographical error.

14

testimony, not its admissibility, and such merits-based arguments should not be addressed in a motion to strike. (*Id.*, at 5).

The Court finds that Paragraph 4 of Mr. Myers' declaration does not clearly contradict his earlier deposition testimony. Plaintiff's concerns about Mr. Myers' testimony relate to his credibility as a witness. They are not grounds for striking Paragraph 4 based on inconsistency. First, Mr. Myers' inability to remember a specific date between October 16, 2017, and December 16, 2017, when he reviewed the Baseline Schedule does not necessarily mean that defendant did not commit significant resources before December 2017. Second, Mr. Myers' characterization of defendant's "man[ning] up" for the Shell Mechanical Work in December 2017 does not foreclose the possibility that defendant committed significant resources related to the Subcontract before December 2017. (*Id.*). For these reasons, Mr. Myers' declaration is not directly contradictory. *Baker*, 581 F.3d, at 690–91. Even if Paragraph 4 could be construed to be of pivotal importance to this case, the Court cannot properly strike it. *See id.*; *Estate of Gray*, 880 N.W.2d at 465. Thus, the Court denies plaintiff's Motion as to Paragraph 4.

### 3. *Paragraphs 5 & 6*

Paragraph 5 of Mr. Myers' declaration describes defendant's pre-mobilization commitments to various subcontractors and summarizes the contract amounts, both individually and in total. (Doc. 92-5, at 25). Paragraph 6 describes defendant's pre-mobilization commitments to various vendors and summarizes the contract amounts, both individually and in total. (*Id.*).

Plaintiff urges the Court to strike Paragraphs 5 and 6 of Mr. Myers' declaration because they contradict the terms of defendant's subcontracts and purchase orders, and defendant failed to attach the relevant subcontracts and purchase orders. (Doc. 95, at 3–5). According to plaintiff, no "person who had actually read the language" in the

subcontracts and purchase orders "could perceive or adjudge that [defendant] could perceive or adjudge that [defendant] would be subject to liability from the[ir] termination." (Doc. 101, at 1). Plaintiff argues that defendant's exposure under the subcontracts was limited to a prorata percentage of the total subcontract sum, plus possible recovery of out-of-pocket expenses and reasonable attorneys' fees, and each purchase order reserved defendant's right to cancel without charge. (Doc. 95, at 3–5 (citing Docs. 95-1, at 19–30; 95-2, at 1–20 (Subcontracts and Terms & Conditions); 95-2, 21–30 (Purchase Orders))). Plaintiff argues that, in effect, defendant's use of Mr. Myers' contradictory statement would mean defendant's own subcontracts were unenforceable (Doc. 101, at 2), and the Court can strike the argument as absurd. (*See id.*, at 2, 2 n.1).

Defendant interprets plaintiff's argument as admitting that defendant entered into the subcontracts and purchase orders summarized in Paragraphs 5 and 6, Mr. Myers has personal knowledge of these contracts, and Mr. Myers' declaration accurately summarized them. (Doc. 100, at 5). Defendant states that the only testimony that plaintiff suggests should be stricken is Mr. Myers' statement that "In the event [defendant] attempted to rescind its contract with [plaintiff], [defendant] would have to resolve its outstanding claims from each [subcontractor or vendor] for breach of contract." (*Id.*, at 5–6 (quoting Doc. 92-5, at 25 (modifying last full sentences of Paragraph 5 and Paragraph 6))). Defendant argues Mr. Myers made this statement based on common sense or, alternatively, lay opinion in light of his personal knowledge and experience that recission would result in defendant needing to resolve outstanding claims. (*Id.*, at 6–8). Thus, defendant argues, Mr. Myers' statement is not speculation. (*Id.*, at 6–7).[7]

---

[7] Defendant also argues that plaintiff speculates by hypothesizing what claims and defenses defendant could raise with its subcontracts, vendors, and plaintiff itself. (Doc. 100, at 7).

The Court finds that Paragraphs 5 and 6 of Mr. Myers' declaration are not sufficiently contradictory to warrant being stricken from the record. Plaintiff first asserts that Mr. Myers' declaration contradicts the terms of defendant's subcontracts and Purchase Orders. At least facially, the documents appear to contradict because defendant's subcontracts have damage-limitation clauses, defendant's purchase orders have cancellation-without-penalty clauses, and yet Mr. Myers asserts in his declaration that defendant had incurred substantial pre-mobilization costs based on, at least in part, the same subcontracts and purchase orders.

Plaintiff also points out that defendant failed to attach the relevant subcontracts and purchase orders to Mr. Myers' declaration. (Doc. 95, at 3–5). But the Court's Local Rules do not require that defendant attach the subcontracts or purchase orders. *See* LR N.D. Iowa. *Contra, e.g.*, *Couch v. Lyon*, No. CIV. 12–3029–RAL, 2013 WL 5942607, at *4, n.2 (D.S.D.) (describing Local Rule requiring otherwise).

Nevertheless, for a Court to properly strike a contradictory statement, the latter statement must be in direct opposition to an earlier statement by the same witness. *See Baker*, 581 F.3d at 690–91. Here, plaintiff analogizes defendant's subcontracts and purchase orders as the earlier statements. (*Id.* (citing Docs. 95-1, at 19–30; 95-2, at 1–20 (Subcontracts and Terms & Conditions); 95-2, 21–30 (Purchase Orders))). But these documents are not statements made by Mr. Myers. So, plaintiff cannot argue that Mr. Myers contradicts himself. In effect, plaintiff instead argues that the sum evidence regarding defendant's damages points in both directions. Plaintiff says that although Mr. Myers' declaration supports defendant's damages calculation, the subcontracts and purchase orders do not. In so arguing, plaintiff describes a fact issue—not an

---

Defendant argues such legal defenses on the merits are irrelevant to the potential for a lawsuit or economic harm. (*Id.*, at 8). This argument, however, is tangential to the issue of the admissibility of Mr. Myers' declaration, and the Court does not reach it.

17

admissibility issue the Court need remedy with a strike. Thus, the Court denies plaintiff's Motion as to Paragraph 5 and Paragraph 6.

### 4. Paragraphs 7 & 8

Paragraph 7 of Mr. Myers' declaration describes defendant's pre-mobilization overhead costs as "substantial." (Doc. 92-5, at 26). Paragraph 8 states that rescinding defendant's contract with plaintiff on December 4, 2017, would be economically unreasonable based on defendant's pre-mobilization financial and contractual commitments. (*Id.*). Plaintiff urges the Court to strike Paragraphs 7 and 8 of Mr. Myers' declaration because they are speculative and based on conjecture. (Doc. 95, at 5).

Plaintiff argues that in Paragraph 7, Mr. Myers asserts that defendant paid substantial overhead costs, without substantiating this knowledge or showing its connection to the project. (*Id.*). Further, plaintiff argues that Mr. Myers fails to state a "magnitude of any substantial overhead cost," and, being that "Mr. Myers[ ] is not an accountant . . ., there is no basis from his personal knowledge that [defendant] had substantial overhead costs as of December 4, 2017." (Doc. 101, at 4).

Defendant argues that Mr. Myers' statement about defendant's payments for overhead are based on his personal knowledge and payments actually incurred pre-mobilization on December 4, 2017. (Doc. 100, at 8). Defendant interprets plaintiff's speculation argument as being based on the fact that Mr. Myers did not quantify the costs attributable to each activity, as defendant states that plaintiff concedes defendant performed the activities Mr. Myers describes. (*Id.*, at 8).

The Court finds that Paragraph 7 of Mr. Myers' declaration does not warrant being stricken from the record. As plaintiff argues, Mr. Myers does not attach supporting documentation to his declaration or quantify the substantial overhead costs defendant incurred. (Doc. 92-5, at 24–26). As the Court noted, however, Mr. Myers was not required to. Further, Mr. Myers need not be an accountant to attest to costs incurred by

18

defendant.  A reasonable juror could find that Mr. Myers, in his role as project estimator, had access to company records pertaining to defendant's overhead costs.  Reviewing such records can impart personal knowledge of such costs.  *Burlington N. R.R.*, 802 F.2d at 1004–05.  Further, a lay witness's opinion in a declaration is admissible if that opinion is "rationally based on perception and helpful to a determination of a fact in issue."  *Id.*; FED. R. EVID. 701.  Here, Mr. Myers' opinion that defendant incurred "substantial" overhead costs is admissible because it appears rationally based on Mr. Myers' perception of defendant's financial commitments before him in his role as a project estimator,[8] and it helps determine the damages at issue in defendant's counterclaims.  *Burlington N. R.R.*, 802 F.2d at 1004.  Thus, the Court denies plaintiff's Motion as to Paragraph 7.

Plaintiff argues that in Paragraph 8, Mr. Myers summarizes testimony made in Paragraphs 5 and 6 of his declaration, to which plaintiff has already objected.  (*Id.*).  Additionally, plaintiff argues that, in Paragraph 8, Mr. Myers concludes that defendant was at risk of being sued by plaintiff for breach of contract, which is unsubstantiated and improper, given that Mr. Myers is not an attorney.  (*Id.*).

Regarding plaintiff's objections to Paragraph 8, defendant argues that plaintiff's objections to Paragraph 8 duplicate its objections to Paragraphs 5 and 6,[9] to which defendant has already responded.  (Doc. 100, at 8).  As above, defendant argues that Mr. Myers' statement about defendant's risk of lawsuits is not speculative, given that defendant did indeed incur pre-mobilization costs.  (*Id.*, at 8–9).  Rather, defendant argues that plaintiff's statements about defendant's likely claims and defenses are

---

[8] Plaintiff does not argue that Mr. Myers' position makes his declaration expert testimony under Federal Rule of Evidence 702.  (*See* Doc. 95).

[9] In plaintiff's Reply, plaintiff states that Paragraph 8 "only relied on the contradicted declarations made in paragraphs 4 through 7."  (Doc. 101, at 4).  Although this appears to be true from the text, plaintiff argued in its brief that Paragraph 8 summarizes only Paragraphs 5 and 6.  (Doc. 95, at 5).  Thus, the Court will make its ruling on Paragraph 8 considering its decisions on Paragraphs 5 and 6 only.  *See* LR 7(g).

speculative.  (*Id.*, at 8–9).  Finally, defendant argues that Iowa law does not require a defrauded party to know the full extent of the fraud or have "perfect foresight" in deciding between recission or affirmation when it begins performance.  (*Id.*, at 9).

In response to defendant's argument, plaintiff notes that Mr. Myers' declaration and defendant's Resistance to Plaintiff's Motion to Strike "are in stark contrast" to defendant's assertion in its Resistance to Plaintiff's Partial Motion for Summary Judgment, in which defendant wrote that it "had incurred millions of dollars of liabilities by December 2017."  (Doc. 101, at 4 (quoting Doc. 90, at 13)).  The Court takes this to mean that defendant offered an estimate of liabilities incurred in its response, but neither Mr. Myers' declaration nor defendant's resistance offer any comparable estimate.

The Court finds that Paragraph 8 of Mr. Myers' declaration does not warrant being stricken from the record.  First, as discussed, the Court declines to strike Paragraph 8 for the same reasons it declines to strike Paragraphs 5 and 6, which Paragraph 8 summarizes.  Second, although Mr. Myers is not an attorney, the Court is reluctant to strike his statement that "if [defendant] abandoned the project on December 4[, 2017,] it would have been at risk of a lawsuit by [plaintiff] for breach of contract."  (Doc. 92-5, at 26).  This statement relates to Mr. Myers' opinion that it would be economically unreasonable to terminate [defendant's] contract with [plaintiff]" on December 4, 2017.  (*See id.*).  Here, as defendant's project estimator, Mr. Myers' opinion about a likely lawsuit is rationally based on his perception.  *Burlington N. R.R.*, 802 F.2d at 1004; FED. R. EVID. 701.  It is also "helpful to a determination of a fact in issue," because it speaks to whether it would have been reasonable for defendant to rescind its contract with plaintiff.  *Id.* at 1004.  Further, businesspeople often consider the possibility of litigation in making business decisions, even though they are not attorneys.  Given that Mr. Myers is not an attorney, however, a reasonable juror could weigh Mr. Myers' factual credibility accordingly.  Thus, the Court denies plaintiff's Motion as to Paragraph 8.

For these reasons, the Court denies plaintiff's Motion to Strike.

### III.    *PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT*

Having resolved plaintiff's Motion to Strike, the Court now turns to plaintiff's Partial Motion for Summary Judgment.  (Doc. 79).  For the following reasons, the Court grants in part and denies in part plaintiff's Motion.

### A.    *Standard*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).  More specifically, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted).  Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

21

(1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it requires "a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). The plaintiff may not then simply point to allegations made in her complaint but must identify and provide evidence of "specific facts creating a triable controversy." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) (internal quotation marks omitted). When considering a motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). Even so, the moving party does not meet its burden by simply providing a massive record, and the Court "will not sort through a voluminous record in an effort to find support for the plaintiff's allegations." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004).

Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

If the *moving* party will bear the burden of persuasion at trial, then that party must support its motion with credible evidence, using any of the materials specified in Rule 56(c), "that would entitle it to a directed verdict if not controverted at trial." *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (1993). If the moving party makes this showing, then the nonmoving party has the burden of production to produce evidentiary

materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery. *Id.*

If the burden of persuasion at trial would be on the *nonmoving* party, then the party moving for summary judgment may satisfy Rule 56's burden of production in two ways, either by submitting affirmative evidence negating an essential element of the claim, or by demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of their claim. *Bedford v. Doe*, 880 F.3d 993, 996–97 (8th Cir. 2018). If the moving party seeks summary judgment on lack of evidence, then the moving party must affirmatively show the absence of evidence. *Hanson v. FDIC*, 13 F.3d 1247, 1253 (8th Cir. 1994). If the moving party does not satisfy this showing, however, then its motion for summary judgment must be denied, and the Court need not consider whether the nonmoving party has met its ultimate burden of persuasion. *Id.*

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *Matsushita*, 475 U.S. at 587–88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). When considering a motion for summary

judgment, the court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

### B. Analysis

Plaintiff moves for summary judgment on defendant's fraud, negligent misrepresentation, and professional negligence counterclaims, and on part of defendant's breach of contract counterclaim. (Doc. 79, at 3–5). Plaintiff also moves for summary judgment on its complaint of declaratory relief. (*Id.*, at 5).

The Court denies plaintiff's Motion for Summary Judgment on plaintiff's declaratory judgment action, because plaintiff does not meet its initial burden.

The Court denies plaintiff's Motion for Summary Judgment on defendant's claim of fraud, because defendant shows a genuine dispute of material fact.

The Court denies plaintiff's Motion for Summary Judgment on defendant's claim of negligent misrepresentation, because plaintiff does not meet its initial burden.

The Court grants plaintiff's Motion for Summary Judgment as to damages for scaffolding costs under defendant's breach of contract counterclaim, because defendant does not show a genuine dispute of material fact.

The Court denies plaintiff's Motion for Summary Judgment on defendant's claim of professional negligence, because defendant shows a genuine dispute of material fact.

### 1. Procedural Arguments

Plaintiff raises two procedural arguments regarding defendant's resistance. The Court will first address these matters before reaching the heart of plaintiff's Motion.

### a. Defendant's Statement of Additional Material Facts

First, plaintiff argues that defendant's Statement of Additional Material Facts violates FED. R. CIV. P. 56(e) because it includes over thirty irrelevant factual statements. (Doc. 98, at 1–2). Plaintiff argues that much of this content is irrelevant because it addresses the parties' subcontract for the underground work on the project, which is not

24

at issue, instead of the Subcontract for the Shell Mechanical Work, which is. (*Id.*, at 2 n.1).

Specifically, throughout its Response to Defendant's Statement of Additional Material Facts, plaintiff asks the Court to strike those statements that would not preclude plaintiff's entitlement to summary judgment. (*See* Doc. 99). Elsewhere, plaintiff argues that defendant's reliance on its own answers to interrogatories constitutes inadmissible hearsay. (*See id.*). Further, plaintiff argues that defendant's statements are unsupported on the record or constitute legal conclusions, not assertions of fact. (*See id.*).

Plaintiff did not challenge the facts relevant to defendant's negligent misrepresentation counterclaim or professional negligence counterclaim. Therefore, the Court does not reach these arguments on that claim.

Plaintiff did challenge the facts raised by defendant relevant to defendant's fraud counterclaim and breach of contract counterclaim. In each instance, the Court overrules plaintiff's objection to the facts used in the Court's analysis.

### b.    Use of Expert Testimony

The Court disagrees with plaintiff's assertion that defendant's use of expert testimony is clearly improper. Plaintiff asserts that defendant's use of expert testimony, via its reliance on the J.S. Held report, is "clearly improper" because defendant quotes the report verbatim and at length, instead of establishing a standard of performance or otherwise relying on Mr. Englehart's opinion. (Doc. 98, at 2). The Court interprets plaintiff's assertion as argument that the Court should not consider defendant's expert testimony—that is, its J.S. Held report—in evaluating plaintiff's Partial Motion for Summary Judgment. The Court, however, will not exclude the Held report.

Plaintiff's argument does not engage with the legal standards governing expert testimony. The purpose of expert testimony is to assist the fact-finder in making complex determinations of fact. *See* Fed. R. Evid. 702; *United States v. R. J. Reynolds Tobacco*

25

*Co.*, 416 F. Supp. 313, 315 (D.N.J. 1976). Relying on expert testimony allows the fact-finder to benefit from the expert's "knowledge, skill, experience, training, or education." FED R. EVID. 702. An expert opinion, however, is only admissible when it is probative, "based on sufficient facts or data" and "the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." FED R. EVID. 702.

Here, plaintiff raises no concerns about whether Mr. Englehart—or, by extension, the J.S. Held report—provides proper expert testimony. And, as presented, defendant's expert testimony could reasonably aid a fact-finder. Further, plaintiff cites no precedent in support for its argument that defendant's use of expert testimony is improper or that the Court should exclude it. Although defendant's decision to quote at length from the J.S. Held report may not follow standard practice, the Court sees no reason that the expert testimony should be excluded. Thus, assuming plaintiff moves for exclusion of defendant's expert testimony, the Court declines to exclude it.

Having disposed of plaintiff's two procedural arguments, the Court now turns to plaintiff's substantive arguments.

## 2. *Declaratory Judgment*

The Court denies summary judgment on plaintiff's declaratory judgment action because plaintiff does not meet its initial burden.

Plaintiff is the moving party for summary judgment on its declaratory judgment claim. (Doc. 1). Plaintiff bears the burden of persuasion in proving its entitlement to relief from the Court. As the moving party also bearing the burden of persuasion, plaintiff must support its Partial Motion for Summary Judgment on this claim with credible evidence, using any of the materials specified in Rule 56(c), "that would entitle it to a directed verdict if not controverted at trial." *Firemen's Fund Ins.*, 8 F.3d at 1310.

26

Plaintiff argues that it is entitled to summary judgment on its declaratory judgment because defendant abandoned the Disputed Change Order Requests. (Doc. 81, at 29–30). In support of its assertion, plaintiff cites defendant's First Supplement to Answers to Second Set of Interrogatories, wherein defendant stated: "Modern Piping incorporates its Initial Disclosures and the J.S. Held reports. The damage calculation in the J.S. Held reports supersedes [Change Order Requests] #23, #24, and #25[.]" (*Id.*, at 29 (citing Doc. 79-6, at 81)). Plaintiff asserts that the J.S. Held damage calculation, however, does not include any breakdown corresponding to the costs covered in the Disputed Change Order Requests. (*Id.*, at 29–30). Plaintiff argues this constitutes a clear abandonment of the Disputed Change Order Requests. (*Id.*).

Defendant asserts that it merely refined its damage calculation related to the Disputed Change Order Requests and has not abandoned its claims. (Doc. 90, at 31–32). Furthermore, defendant proffered witnesses who testified that the Disputed Change Order Requests were valid. (*Id.*, at 31). Defendant argues that genuine issues of disputed fact exist about the Disputed Change Order Requests and that a grant of summary judgment on plaintiff's declaratory judgment is therefore inappropriate. (*Id.*).

Plaintiff does not clearly show that it is entitled to summary judgment. *See Firemen's Fund*, 8 F.3d at 1310. Instead, plaintiff assumes that defendant implicitly abandoned its claims by offering its damage calculations to estimates that do not include line items for expenses under the Disputed Change Order Requests. (Doc. 81, at 29–30 (citing report from September 28, 2021).

The Court does not find that defendant abandoned the Disputed Change Order Requests. The damage calculations in the September 28, 2021 J.S. Held report are broken down into six categories: Loss of Labor Productivity; Additional Non Installation Foreman Time; Additional Testing; Scaffolding Costs; Pending Change Orders; and Outstanding Contract Balance. (Doc. 79-6, at 20). Following defendant's definitions,

plaintiff characterizes the Disputed Change Orders as being for additional supervision and labor costs in the boiler room (Change Order Request 23) and in the jobsite in general (Change Order Request 24), and additional costs for general conditions. (Change Order Request 25). Plaintiff does not show that defendant had insufficient evidence to show that these expenses corresponding to the Disputed Change Orders were in the report. Thus, plaintiff's evidence would not entitle it to a directed verdict if not controverted at trial. *Firemen's Fund Ins.*, 8 F.3d at 1310.

For these reasons, the Court denies plaintiff's Motion as to its declaratory judgment.

### 3. *Counterclaims*

The Court denies plaintiff's Motion for Summary Judgment on defendant's counterclaims of fraud, negligent misrepresentation, and professional negligence. The Court grants plaintiff's Motion for Summary Judgment as to damages for scaffolding costs under defendant's breach of contract counterclaim.

Because defendant bears the burden of persuasion on its counterclaims, plaintiff can satisfy Rule 56's burden of production by submitting affirmative evidence negating an essential element of the counterclaim, or by demonstrating to the Court that defendant's evidence is insufficient to establish an essential element of its counterclaim. *See Bedford*, 880 F.3d at 996–97.

### a. *Fraud*

The Court denies plaintiff's Motion as to defendant's fraud claim because defendant shows a genuine dispute of material fact.

To establish a claim for fraud under Iowa law a party must prove: "(1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; and (7) resulting injury and damages." *Hirschbach Motor Lines, Inc. v. SmartTruck Undertray Sys., Inc.*, C17-1019-LTS, 2018 WL 283261, at *18 (N.D. Iowa

28

Jan. 3, 2018) (citing *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 687 (Iowa 2010)). Remedies for fraud arise out of Iowa tort law.

### i. Arguments

Plaintiff argues that it is entitled to summary judgment on defendant's fraud counterclaim because defendant waived its claim of fraud. In plaintiff's telling, defendant knew of the material misrepresentation—here, the inaccurate Baseline Schedule—when it began its contractual obligation—here, the Shell Mechanical Work. (Doc. 81, at 7–14). Plaintiff argues that when (1) the contract is executory when the material misrepresentation is discovered and (2) the party claiming fraud nevertheless performs, Iowa law deems a fraud claim waived. (Doc. 81, at 7–14; 98, at 2–3). Plaintiff argues that the contract was executory when the material misrepresentation was discovered by defendant on December 4, 2017. (Doc. 98, at 3).

"An executory contract is defined as '[a] contract that has not as yet been fully completed or performed.'" *Econ. Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 650 (Iowa 1995) (quoting BLACK'S LAW DICTIONARY 570 (6th ed.1990)).

Further, plaintiff argues that no exception to this rule applies because it would not have been economically unreasonable, as defendant asserts, for defendant to stop performance when it learned of the misrepresentation. (Doc. 98, at 3–4).

According to defendant's counterclaim, defendant asserts that plaintiff's representation was the Baseline Schedule[10]—again, the same as both the Bid Schedule and Schedule E—which defendant asserts was false when represented to defendant as the project schedule in both August 2017 and October 2017. (Doc. 43, at 18–19; 22–23; 41–43). Defendant asserts that it relied on the Baseline Schedule by determining its

---

[10] In defendant's claims, defendant points out specific representations in the Baseline Schedule. (Doc. 43, at 41–42). For convenience, the Court refers to the false representations as coming from the Baseline Schedule, as it appears all dates mentioned were represented there.

29

contract budget and manpower needs, and entering into the Subcontract.  (*Id.*, at 19; 41–43).  Defendant asserts that it incurred millions of dollars in additional costs to perform the work due to plaintiff's misrepresentations.  (*Id.*, at 41–43).  Defendant asserts that its counterclaim fulfills all other elements of a fraud claim.  (*Id.*, at 41–43); *see also Hirschbach Motor Lines*, 2018 WL 283261, at *18.

Defendant argues that plaintiff's Motion on defendant's fraud claim fails because it did not waive its fraud claim.  First, citing precedent from this Court and Iowa state courts, defendant argues that affirmance of a contract is not waiver of tort remedies and argues plaintiff's caselaw is irrelevant or outdated.  (Doc. 90, at 5–11).  Additionally, defendant argues that plaintiff cannot evade liability for fraud by relying on a contract obtained by fraudulent misrepresentation, as defendant argues plaintiff does here.  (*Id.*, at 8).

Second, defendant argues that waiver is generally a fact for the jury and defendant has shown evidence supporting that it did not waive its claim.  (*Id.*, at 11–12).  Defendant states that it "contemporaneously objected to [plaintiff's] fraud by communicating to [plaintiff] that [defendant] intended to seek compensation" and therefore "reserved its rights."  (*Id.*).  Moreover, defendant asserts that a showing of waiver, as plaintiff argues applies here, requires a high evidentiary burden.  (*Id.*, at 12 n.23).  Here, defendant argues that plaintiff cannot meet that burden because defendant affirmed the contract and reserved its right to damages, because its commitments were substantial, and rescinding would have been economically unreasonable.  (*Id.*, at 13).  Finally, defendant argues that it can recover damages under either an expectation or a reliance theory.  (*Id.*, at 14).

## ii.    *Applicable Law*

When a contract is procured by fraud and the defrauded party discovers this fraud only after entering into the contract, the defrauded party has two courses of action: (1) it may rescind the contract, or (2) it may affirm the contract and sue for damages.  *Phipps*

30

*v. Winneshiek County*, 593 N.W.2d 143, 146 (Iowa 1999); *United Forest Products Co. v. Baxter*, 452 F.2d 11, 16–17 (8th Cir. 1971) (citing Iowa law).

A defrauded party may, however, waive its fraud claim. *United Forest Products*, 452 F.2d at 16–17 (quoting 37 C.J.S. Fraud § 69). Waiver requires "[1] the existence of a right, [2] knowledge [that is] actual or constructive, and [3] an intention to relinquish such right." *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Federated Mut. Ins. Co.*, 596 N.W.2d 546, 552 (Iowa 1999) (internal quotation marks omitted). Waiver can be express, shown by affirmative acts, or implied, inferred from conduct showing the party intended waiver. *Id.* Waiver is typically a question for the jury, but "when the evidence is undisputed . . ., the issue is one of law for the court." *Id.*; *see also Ankeney v. Brenton*, 238 N.W. 71, 75 (Iowa 1931).

Whether a defrauded party waives its fraud claim by performing after its discovery depends on (1) when the defrauded party learned of the fraud, and (2) whether the defrauded party would be injured by rescinding. "If the contract remains executory in whole or part when the fraud is discovered, and no injury will be suffered by rescinding instead of affirming, then any injury caused by proceeding is self-inflicted" and the defrauded party waives its fraud claim. *See Christy v. Heil*, 123 N.W.2d 408, 411 (Iowa 1963). But if the defrauded party would suffer an injury by rescinding,[11] it retains its fraud claim. *See id.* (*quoting Bean v. Bickley*, 174 N.W. 675, 684 (Iowa 1919)) ("There is not and there should not be a general rule, even in an executory contract, that mere

---

[11] The Court notes that Iowa cases focus on the existence of an injury, without stating that the injury must make rescinding "economically unreasonable." (*See* Doc. 90, at 13 (describing defendant's damages as substantial, making it economically unreasonable for defendant to rescind)). Nevertheless, suffering an economic injury upon rescinding may be evidence that a defrauded party did not waive its fraud claim by affirming a contract it knew to be fraudulent. *See Bean*, 174 N.W. at 684; *United Forest Prods.*, 452 F.2d at 17–19.

31

discovery and proceeding bars all rights to redress. That must depend on the situation of the wronged party.").

The defrauded party suffers an injury if rescinding causes it actual injury or if rescinding causes it to lose profits. *See Bean*, 174 N.W. at 684 ("[The defrauded party] should not be compelled to refrain from affirming and proceeding further if rescinding will lose [it] a profit [it] would have enjoyed had [it] been fairly dealt with––much less if rescinding will cause [it] actual injury."); *see also United Forest Prods.*, 452 F.2d at 17–19 (citing *Bean* for this principle); *Eckstein v. Storck*, 203 N.W.796, 798 (Iowa 1925) (same). If the defrauded party can rescind safely, doing so without injury or loss, it waives its fraud claim by affirming the contract. *See Bean*, 174 N.W. at 683; *see also United Forest Prods.*, 452 F.2d at 17–19 (citing *Bean* for this principle); *Eckstein*, 203 N.W.at 798 (same).

### iii.    Application

When defendant learned of plaintiff's fraud is ultimately immaterial here, because it is undisputed that the contract was executory when defendant learned of the fraud, whether it was wholly executory on December 4, 2017, or only partially executory on that date. (*See* Docs. 81, at 13 ("The evidence unequivocally shows that the Subcontract had not been substantially performed at the time [defendant] learned of the facts giving rise to the alleged fraud."; Docs. 79-1, at 3; 85, at 5 (describing defendant as beginning performance of the Subcontract work on December 4, 2017)). *See also Christy*, 123 N.W.2d at 411. Additionally, it is undisputed that defendant affirmed the contract after learning of plaintiff's fraud. So, the key question is whether defendant would suffer an injury by rescinding the Subcontract, as opposed to affirming it. *See id.*

The Court finds that plaintiff meets its initial burden to show evidence sufficient if uncontroverted to support a directed verdict that defendant would not suffer an injury by rescinding instead of affirming.

32

Here, plaintiff asserts that defendant "expended a total of only $224,444.52, which is, approximately 1.5% of the total Subcontract Amount," and asserts it is reasonable for the Court to presume that defendant's "costs incurred as of December 4th[, 2017] were substantially lower." (Doc. 81, at 13). Plaintiff argues that defendant's losses were "clearly avoidable," and that defendant could have easily rescinded the contract after beginning performance on December 4, 2017. (*Id.*). In its Reply, plaintiff argues that defendant's contracts with subcontractors and vendors limited their recovery from defendant, thereby minimizing defendant's injury upon recission. (Doc. 98, at 3–4). [12]

Plaintiff's evidence of defendant's expenses and liabilities supports a finding that although defendant had incurred expenses and financial commitments based on the Subcontract, it could avoid further injury by rescinding instead of affirming the Subcontract. *See Christy*, 123 N.W.2d at 411; *Bean*, 174 N.W. at 684. Thus, the Court finds that this evidence, if presented and uncontroverted at trial, would entitle plaintiff to a directed verdict. *Firemen's Fund Ins. Co.*, 8 F.3d at 1310.

---

[12] Although not the focus of plaintiff's argument, plaintiff notes that defendant waited a year after completing the Subcontract to bring its fraud counterclaim. (*See* Doc. 81, at 10, 13). Plaintiff's implied argument appears to be that defendant waived its fraud claim via its conduct in waiting to bring suit. (*See id.*, at 10). But the Court finds plaintiff's supporting cases distinguishable. *Wisdom v. Bd. Of Sup'rs of Polk Cty.*, 19 N.W.2d 602, at 609 (Iowa 1945) (discussing waiver of statement of facts requirement in regulatory statute); *Westfield Ins. Cos. V. Econ. Fire & Cas. Co.*, 623 N.W.2d 871, 879 (Iowa 2001) (discussing estoppel as waiver in context of insurance recovery); *Bulley & Andrews, Inc. v. Symons Corp.*, 323 N.E.2d 806, 810–11 (Ill. App. Ct. 1975) (finding "plaintiff would not be entitled to relief [on fraud claim] because it remained silent on the matter until nine months after the [contract's] completion").

Here, even if the Court found defendant's conduct in waiting to bring suit as conduct supporting waiver, it would not find waiver here because it is undisputed that defendant repeatedly informed plaintiff of problems with the Baseline Schedule and that it would be seeking compensation based on the inaccuracies. (*See also* Doc. 90, at 11–12) (arguing that defendant never voluntarily or intentionally relinquished its fraud claim).

Defendant, however, answers plaintiff's argument with evidence of its own. The Court finds that defendant shows a genuine dispute of material fact as to its loss and injury upon recission, and thus, whether it waived its fraud claim. Defendant asserts that it incurred millions of dollars of liabilities by December 2017, such that it would be financially harmful to rescind the contract instead of affirming it. (Doc. 90, at 13–14). Defendant attributes these costs to—among others—the bidding process, pre-mobilization preparations, coordination with local trade unions, work on drawing and modeling, and costs forgoing other projects in favor of the Subcontract. (*Id.*, at 13). In support, defendant cites Mr. Myers' declaration, in which he attests to defendant's liability to subcontracts and vendors, defendant's overhead costs, and defendant's substantial and contractual commitments to the project. (*Id.* (citing Doc. 85-1, at 12–13 (citing Doc. 92-5, at 383)).[13] Further, defendant argues it could not bid on other projects because of its commitments to the Subcontract. (*See id.*). Thus, a reasonable jury could find that defendant could not rescind safely. *See Christy*, 123 N.W.2d at 411; *Bean*, 174 N.W. at 683. A reasonable jury could also find that defendant would be forced to forgo its expected profits by rescinding the Subcontract. *Bean*, 174 N.W. at 684.

For the reasons above, the Court **denies** plaintiff's Motion for Summary Judgment on defendant's fraud counterclaim.

### b. *Negligent Misrepresentation*

The Court denies plaintiff's Motion as to defendant's negligent misrepresentation claim because plaintiff fails to meet its initial burden.

---

[13] Plaintiff objects to defendant's facts as unsupported in violation of Local Rule 56(b)(4) and 56(e). The Court finds that defendant's facts are supported as cited. Indeed, it appears defendant's facts match Mr. Myers' declaration verbatim. Further, the Court has already denied plaintiff's Motion to Strike as to this same evidence. Thus, plaintiff's objection is overruled.

The showing required for a negligent misrepresentation claim is similar to the showing required for a fraud claim.  Under Iowa law, negligent misrepresentation occurs when:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Van Sickle Constr.*, 783 N.W.2d at 690 (quoting RESTATEMENT (SECOND) TORTS § 552).

### i. Arguments

Plaintiff argues that it is entitled to summary judgment on defendant's negligent misrepresentation counterclaim for two reasons.  (Doc. 81, at 14–19).  First, plaintiff argues that negligent misrepresentation under Iowa law requires that the offending party share false information, and that defendant concedes that plaintiff's representations made via the Baseline Schedule were not false when plaintiff made them on August 1, 2017.  (Doc. 81, at 14–15; 98, at 4–5).  Plaintiff seems to assert that, at most, its representations *became* false as the project issues compounded.  (*See* Doc. 98, at 5).

Second, plaintiff argues that defendant's required expert testimony cannot adequately support a jury finding that plaintiff "failed to exercise reasonable care or competence as a design-build contractor by including the [Baseline] Schedule as an exhibit to the Subcontract."  (Docs. 81, at 15–19; 98, at 5–6).  Plaintiff argues this question must be resolved by an expert because it is not within the common experience of persons.  (Doc. 81, at 19).  Plaintiff argues that defendant's expert instead testified only about what constitutes "good industry practice" (Doc. 81, at 15–19), which is insufficient to establish the requisite standard of care.  (Doc. 98, at 6–7 (citing RESTATEMENT (SECOND) TORTS § 299A)).

35

Defendant argues that plaintiff's Motion on defendant's negligent misrepresentation counterclaim fails for two reasons. First, defendant argues that the Baseline Schedule was false when plaintiff presented it to defendant in October, 2017. (Doc. 90, at 15–16). Second, defendant argues that no expert testimony is required because the relevant standard of care is that of a reasonable person—which can be determined by a jury of laypeople. (*Id.*, at 16–17).[14]

## ii. *Applicable Law*

The standard of care in a negligent misrepresentation action is that of a reasonable person. *Van Sickle Constr.*, 783 N.W.2d at 690–91 (citing RESTATEMENT (SECOND) TORTS § 552); *see also* RESTATEMENT (SECOND) TORTS § 552 cmt. e. ("[A] defendant is subject to liability if, but only if, he has failed to exercise the care or competence of a reasonable man in obtaining or communicating the information."). "What is reasonable is, as in other cases of negligence, dependent upon the circumstances" and a question for the jury, unless the facts clearly support only one conclusion. RESTATEMENT (SECOND) TORTS § 552 cmt. e.

The Court finds that expert testimony is not necessary here. As long as the primary facts can be accurately and intelligibly described to the jury and the jury, as people of common understanding, can understand those facts and draw correct conclusions from them, the same way that witnesses with special training or experience would, no expert testimony is required. *See Schlader v. Interstate Power Co.*, 591 N.W.2d 10, 14 (Iowa 1999). Accordingly, expert testimony is typically required to explain complex issues specific to professional responsibilities or discretion, such as in medical malpractice cases. *See Eventide Lutheran Home for the Aged v. Smithson Elec. & Gen. Const., Inc.*,

---

[14] Defendant also argues that if expert testimony is required, then Mr. Englehart's expert testimony suffices. (Doc. 90, at 18–20, 20 n.32). The Court, however, does not reach this argument because it finds no expert testimony is required.

445 N.W.2d 789, 791 (Iowa 1989); *Nationwide Agribusiness v. Structural Restoration, Inc.*, 705 F.Supp.2d 1070, 1082 (S.D. Iowa, 2010) (citing *Welte v. Bello*, 482 N.W.2d 437, 440–41 (Iowa 1992) (collecting cases)). Even then, expert testimony will not be admitted if a layperson reviewing the facts could find that, in the ordinary course of events, the harm would not have occurred had the defendant used reasonable care. *Welte*, 482 N.W.2d at 441 (quoting *Forsmark v. State*, 349 N.W.2d 763, 769 (Iowa 1984)).

### iii.    Application

Here, the Court finds plaintiff does not meet its initial burden in its Motion for Summary Judgment on defendant's negligent misrepresentation counterclaim. First, plaintiff asserts that defendant "has adduced no evidence, nor offered any expert opinion, that the [Baseline] Schedule was not accurate" when defendant "received [it] on August 1, 2017." (Doc. 81, at 15). Plaintiff's argument is not responsive to defendant's assertion that plaintiff negligently misrepresented the Baseline Schedule in October 2017. But plaintiff neither cites evidence refuting this claim that the Baseline Schedule was false when plaintiff represented it as such on October 11, 2017, nor affirmatively shows the absence of evidence establishing that the Baseline Schedule was false on October 11, 2017.[15] *Bedford*, 880 F.3d at 996–97; *Hanson*, 13 F.3d at 1253. For this reason,

---

[15] For the following reasons, the Court finds plaintiff's argument and evidence in its Reply do not address "newly-decided authority" or respond to "new and unanticipated" arguments made by defendant in its Resistance such that the Court can consider them in its summary judgment decision. *See* LR 7(g).

In a footnote in plaintiff's brief in its Motion for Summary Judgment, plaintiff argues that defendant's negligent misrepresentation counterclaim may not "even make[ ] sense in the context of the Subcontract," given that the Subcontract included opportunities for adjustments. (Doc. 81, at 15 n.9). The Court reads this footnote as evidencing that plaintiff was aware that defendant may claim that plaintiff misrepresented the Baseline Schedule as accurate on October 11, 2017, when the Subcontract was signed. Further, defendant's counterclaim included the date of December 11, 2017, which was at least one of the dates upon which plaintiff made a false representation by communicating the Baseline Schedule as the project schedule on December 11, 2017. (*See* Doc. 43, at 23; *see also id.*, at 44 (incorporating same)).

summary judgment is inappropriate on defendant's negligent misrepresentation counterclaim.

Second, despite plaintiff's contention, defendant need not offer expert testimony on this issue. To show a need for expert testimony, plaintiff must show that a layperson could not comprehend the facts and, viewing those facts in light of the circumstances of the case, determine whether or not the party's behavior was reasonable without the assistance of expert testimony. *Schlader*, 591 N.W.2d at 14. Plaintiff says the issue the jury must resolve is whether it acted with "reasonable care or competence as a design-build contractor by including the [Baseline] Schedule as an exhibit to the Subcontract," which it asserts is a question outside a layperson's comprehension. Defendant says the issue is whether the plaintiff acted as a reasonable person would in communicating the relevant project schedule, which it asserts was the Baseline Schedule. As such, defendant argues that a layperson presented with the facts can determine whether or not plaintiff

---

In its Reply, plaintiff argues that defendant is claiming a "new cause of action"—not negligent misrepresentation—because plaintiff already provided the Subcontract, including the Baseline Schedule, to defendant on August 1, 2017. (Doc. 98, at 5, 5 n.5). Plaintiff asserts this early disclosure is undisputed, but cites only its Supplementary Appendix in support. (Doc. 98, at 5 n.5 (citing Doc. 99-4, at 17)). Further, it is not clear from the evidence cited when this early disclosure was made. Additionally, plaintiff presents evidence in its Reply that defendant knew the schedule had changed, and thus impliedly knew the Baseline Schedule was false, at the time of contracting. (Doc. 98, at 5, 5 n.5). Citing a report in defendant's Appendix, plaintiff asserts that it sent defendant a "10.9.2017 6-Week Look Ahead Schedule" before the Subcontract was signed. (Doc. 98, at 5 (citing Doc 92-5, at 85)). But this report does not show the date that the schedule was disclosed to defendant. In its Supplementary Appendix, plaintiff shows an email supporting the 6-Week Look Ahead was disclosed to defendant on October 10, 2017. (Doc. 98, at 5 (citing Doc. 99-1, at 43–44).

Local Rule 7(g) exists to ensure that parties are able to respond to opposing counsel's argument and evidence offered in support thereof through the Court's standard briefing process. Here, defendant was not afforded this opportunity because plaintiff violated this rule. Thus, the Court will not consider plaintiff's argument and evidence in its decision on plaintiff's Motion here. *See* LR 7(g).

acted reasonably when representing the Baseline Schedule as the project schedule. *Welte*, 482 N.W.2d at 441.

The Court concludes that the accuracy of the Baseline Schedule and its resulting effects are sufficiently within the common understanding of the typical juror such that expert testimony is not required. Though the disputed matters may touch on matters of special skill, the essential question is whether a reasonable person in plaintiff's position— whether acting as design-builder or not—would have shared the Baseline Schedule as the project schedule when sharing the bid materials and when presenting the Subcontract for signing. *Van Sickle Constr.*, 783 N.W.2d at 690–91 (citing RESTATEMENT (SECOND) OF TORTS § 552); *see also* RESTATEMENT (SECOND) OF TORTS § 552 cmt. e. Ultimately, the question the jury must resolve is whether plaintiff knew or should have known that the project schedule it communicated was false. This question is not outside a layperson's comprehension.

For these reasons, the Court **denies** plaintiff's Motion for Summary Judgment on defendant's negligent misrepresentation counterclaim.

### c.    *Breach of Contract—Scaffolding Reimbursement (Damages Only)*

The Court grants plaintiff's Motion on the damages portion of its breach of contract counterclaim based on Change Order Request 24, one of the Disputed Change Orders, in which defendant seeks reimbursement for its scaffolding costs. The Court finds that defendant does not show a genuine dispute of material fact that plaintiff waived compliance with the terms of Paragraph 7.6.

To prevail in a breach of contract claim under Iowa law, a suing party must show:

(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [the suing party] has performed all the terms and conditions required under the contract; (4) the [other party]'s breach of the contract in some particular way; and (5) that [the suing party] has suffered damages as a result of the breach.

39

*Cross Over, LLC v. Raph Assocs., Inc.*, No. 19-CV-3040-CJW-MAR, 2020 WL 6531237, at *3 (N.D. Iowa, June 23, 2020) (quotation omitted).

### i. Arguments

Plaintiff argues that it is entitled to summary judgment with respect to damages on defendant's breach of contract counterclaim based on its scaffolding expenses. Plaintiff argues that defendant cannot recover any of its scaffolding costs. (Doc. 81, at 19–20 (citing Doc. 79-6, at 20)). First, plaintiff argues that defendant failed to comply with the claim procedure under Paragraph 7.6 of the Subcontract. (Doc. 81, at 19–22). Plaintiff argues that defendant shows no evidence supporting that it did.[16] (Doc. 98, at 7, 7 n.7). Plaintiff argues that because defendant performed, it was obligated to continue with the terms of the contract, including to making claims in accordance with Paragraph 7.6. (*Id.*, at 8).

Second, plaintiff argues that because plaintiff did not waive defendant's obligation to comply with the contractual claim procedure, defendant "forever waived" its right to increase the Subcontract Amount when it failed to comply with Paragraph 7.6. (Docs. 81, at 20–27; 98, at 7–8). Plaintiff argues that defendant cannot claim that Paragraph 7.6 is unenforceable because it chose to perform in the face of plaintiff's breach. (Doc. 81, at 22–26). Plaintiff further argues that the evidence shows that defendant had opportunity to comply with Paragraph 7.6's requirements. (*Id.*, at 26–27).[17]

---

[16] Plaintiff also argues that defendant's president Ken Brown admitted that defendant's costs incurred with the scaffolding were defendant's mistake and told plaintiff that defendant had no intention of trying to recoup them. (*Id.*, at 7 (citing Docs. 99-1, at 48–50; 99-2, at 1–3)).

But plaintiff does not show why it did not share this information in its brief on its Motion. Here, defendant has raised no new argument necessitating this disclosure and given defendant's counterclaim, it would not be unanticipated that plaintiff would need to assert it did not agree to pay the scaffolding costs. Thus, the Court cannot consider this argument. LR 7(g).

[17] Plaintiff also argues that defendant cannot recover damages for its scaffolding costs because the Subcontract expressly provides that defendant is responsible for scaffolding. (Doc. 81, at

Defendant argues that plaintiff's motion on defendant's breach of contract claim fails for four reasons. First, defendant argues that plaintiff's fraudulent misrepresentation and material breaches of contract preclude enforcement of the Subcontract's terms and conditions. (Doc. 90, at 21–23). Second, defendant argues that under Iowa law, waiver occurs when a party voluntarily and intentionally relinquishes a known right, which defendant argues it did not do because it promptly complained about the breach. (*Id.*, at 23–24). Third, defendant argues that plaintiff waived strict adherence to the formal change order process when it failed to follow or enforce it, including the seven-day substantiate requirement. (*Id.*, at 25–29). Fourth, defendant argues its Disputed Change Order Requests gave plaintiff adequate notice because they informed plaintiff that actual conditions did not match what defendant had anticipated and that defendant required additional money to complete the work. (*Id.*, at 28–29).

### ii. *Applicable Law*

A party to a contract may waive its rights. Again, "[t]he essential elements of a waiver are [1] the existence of a right, [2] knowledge [that is] actual or constructive, and [3] an intention to relinquish such right." *Iowa Comprehensive Petroleum Underground*

---

23, 23 n.12). The Subcontract states: "The Subcontractor shall perform all work to include all labor, materials, equipment, testing, scaffolding . . . and all other things reasonably necessary for and incidental to the completion of the Work." (Doc. 79-3, at 26) (emphasis added). This language is included in "Schedule B–Scope of Work." (*Id.*). The Subcontract states that changes in scope fall under the change order process, not Paragraph 7.6. (*Id.*, at 12) ("A Subcontract Change is a change in the Subcontract Work within the general scope of the Subcontract[.]"). Thus, the Court interprets Schedule B as pertaining to the change order process, not Paragraph 7.6, which is the foundation for plaintiff's arguments. As such, the Court does not consider Schedule B in its analysis.

Plaintiff also argues in the alternative that because defendant did not give any notice that it required scaffolding until it issued Change Order Request 24 on September 17, 2018, defendant is, at most, only entitled to scaffolding costs incurred after that date. (*Id.* at 23–24, 26–27). The Court does not reach this argument because it grants plaintiff's Motion.

*Storage Tank Fund Bd.*, 596 N.W.2d at 552 (internal quotation marks omitted). "When a contract unambiguously requires a written change order or other procedure to modify the contract, the contractor is generally not allowed to recover for additional work unless the contractor followed this procedure or the owner waived the required procedure." *Ryan Comps. US, Inc. v. FDP WTC, LLC*, No. 20-1366, 2021 WL 4592249, at 4 (Iowa Ct. App. Oct. 6, 2021). Waiver is typically a question for the jury, but "when the evidence is undisputed . . ., the issue is one of law for the court." *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 596 N.W.2d at 552; *see also Ankeney v. Brenton*, 238 N.W. 71, 75 (Iowa 1931).

### iii.    Application

Defendant bears the burden of persuasion to show breach of contract. Plaintiff thus has the initial burden to show that defendant has insufficient evidence to show breach of contract or to show its own evidence that defeats defendant's claim of breach of contract. Here, plaintiff meets its initial burden because plaintiff shows evidence that defendant did not comply with the terms and conditions of Paragraph 7.6.

In support of defendant's noncompliance with Paragraph 7.6, plaintiff presents a March 26, 2018 email from plaintiff's project engineer, Anna Gannon, to defendant stating that "[a]ny scaffolding/etc. required at this point to install overhead mechanical piping will not be [plaintiff]'s responsibility." (Doc. 81, at 22 (citing Doc. 79-6, at 8)). Plaintiff also shows a field report by Mr. Chapman stating that scaffolding was being installed as of April 23, 2018. (Doc. 81, at 22 (citing Doc. 79-6, at 10)). Plaintiff also points to the Subcontract's express language, which states that defendant is responsible for all scaffolding. (Doc. 81, at 23 (citing Doc. 79-3, at 28)). But this evidence does not conclusively show that defendant did not comply with Paragraph 7.6's terms.

Other evidence, however, shows defendant did not comply. Per the Subcontract, defendant was only entitled to additional compensation under Paragraph 7.6 if it made its

42

request "within seven (7) days after the first occurrence of the event giving rise to the request" and provided plaintiff with certain information, including an itemized quantification of actual or estimated damages. (Doc. 81, at 20 (citing (Doc. 79-3, at 11–12))). Thus, plaintiff focuses on defendant's failure to comply with these requirements, which plaintiff asserts renders defendant's request for scaffolding costs "forever waived." (Doc. 79-3, at 12). Plaintiff shows that the company performing defendant's scaffolding work invoiced defendant monthly, which means defendant could have provided plaintiff with its actual costs. (Doc. 81, at 26 (citing Doc. 79-1, at 8 (citing Doc. 79-6, at 44))). Moreover, plaintiff argues defendant could have substantiated its request within the seven-day time frame because it "knew, by September 6, 2018, which was eighteen-days before [defendant] issued [Change Order Request] 24, that [defendant] had incurred $630,195.13 in scaffolding costs." (Doc. 81, at 26). Nevertheless, plaintiff argues that defendant did not request money for its scaffolding costs from plaintiff within seven days of the first scaffolding cost incurred and, even when it did make a request, did not substantiate the costs as required by Paragraph 7.6. (*See id.*).

Thus, plaintiff has shown evidence negating the third element of defendant's breach of contract claim—that is, that defendant has performed all the terms and conditions required under Paragraph 7.6 of the Subcontract. *Bedford*, 880 F.3d at 996–97. The Court finds plaintiff has met its initial burden. Were this evidence uncontroverted at trial, this evidence would entitle plaintiff to a directed verdict. *Firemen's Fund Ins.*, 8 F.3d at 1310.

Having found that plaintiff meets its initial burden, the Court now analyzes defendant's arguments to see if a genuine dispute of material fact exists as to whether defendant complied with the terms of Paragraph 7.6, thereby precluding summary judgment. *See Mosley*, 415 F.3d at 910.

43

Defendant asserts two arguments in response. First, defendant argues that plaintiff effectively waived compliance with the Subcontract's terms and conditions concerning the change order requests, therefore excusing defendant's noncompliance with the seven-day substantiate requirement. As described below, defendant focuses on the change order process. As the evidence and arguments show, the parties dispute whether Paragraph 7.6 or the change order process governed defendant's request for scaffolding reimbursement. Viewing the evidence in the light most favorable to defendant as the nonmoving party, *Tolan*, 572 U.S. at 651, the Court analyzes defendant's evidence, offered for the change order process, for any genuine dispute of material fact regarding compliance with Paragraph 7.6. Second, defendant argues that plaintiff's material breaches of the Subcontract make its terms and conditions unenforceable.

To survive summary judgment, defendant must show a genuine dispute of material fact. In practice, defendant must present evidence capable of persuading a reasonable jury to find in its favor based on at least one of its arguments.

Because plaintiff asserts that defendant did not comply with the terms of 7.6, the legally relevant issue is whether plaintiff waived the issue of defendant's compliance with terms of 7.6. Though plaintiff anticipates defendant's waiver argument as seeking to show "that there was any sort of course of dealing in which the parties repeatedly disregarded the requirements of Paragraph 7.6" (Doc. 81, at 23), defendant's argument entails the change order process under a different section. (*See* Doc. 90, at 25–27).

Given that plaintiff is the party arguing defendant's noncompliance with the Subcontract's terms and conditions such that defendant cannot show a breach of contract, the Court will analyze the issues of compliance and whether plaintiff waived defendant's compliance as plaintiff characterizes them. That is, the Court will analyze whether plaintiff showed that defendant failed to comply with Paragraph 7.6, and whether

44

defendant showed a genuine dispute of material fact as to whether it complied with Paragraph 7.6 or not.

Here, to survive summary judgment, defendant needs to show that plaintiff waived defendant's compliance with the terms and conditions of Paragraph 7.6—not the change order process—such that plaintiff breached the Subcontract by denying payment for defendant's scaffolding costs. (*See* Doc. 81, at 19–27; 98, at 8 n.8). So, defendant's argument that plaintiff waived the change order process is only relevant in so far as waiver of the change order process would create dispute about plaintiff's waiver of Paragraph 7.6's terms and conditions.

"A written change order requirement . . . is not of the essence of the contract, but is a detail in the performance." *Central Iowa Grading, Inc. v. UDE Corp.*, 392 N.W.2d 857, 860 (Iowa Ct. App. 1986). As such, "[t]his type of requirement can be waived by the owner's knowledge of, agreement to, or acquiescence in such extra work, a course of dealing which repeatedly disregards the requirement, and a promise to pay for extra work, orally requested by the owner and performed in reliance thereon." *Id.* Although *Central Iowa Grading* is a case about a subcontractor's obligations as determined by the terms of the contract between the owner and the principal contractor, courts have applied it using Iowa law in other contexts. *See also Ryan Comps. US*, 2021 WL 4592249, *at 4 n.8 (citing *Central Iowa Grading*) (owner-contractor contracts); *EAD Control Sys., LLC v. Besser Co. USA*, No. C 11–4029–MWB, 2012 WL 2357572, at *6 (N.D. Iowa June 19, 2012) (non-construction contract).

The Court applies *Central Iowa Grading*, 392 N.W.2d at 860, on which both parties rely in their briefing. (*See* Doc. 81, at 22–23; 90, at 25–27). Thus, the Court looks to defendant's cited portions of the record for evidence showing one of the following: (1) plaintiff's knowledge of, agreement to, or acquiescence in defendant's scaffolding installation; (2) a course of dealing which repeatedly disregards term and

45

conditions as required in the Subcontract, as to Paragraph 7.6 or as inferred to Paragraph 7.6 via a course of dealing in the change order process; or (3) plaintiff's promise to pay for the scaffolding, and defendant's reliance thereon. *See Central Iowa Grading*, 392 N.W.2d at 860. The Court views the evidence in the light most favorable to defendant. *Tolan*, 572 U.S. at 651. If the evidence raises a genuine issue of material fact, then plaintiff's waiver is a question for the jury.

The Court finds that defendant does not show a genuine dispute of material fact as to plaintiff's waiver of compliance with terms and conditions under the change order process or Paragraph 7.6. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

The Court first notes that in support of its assertion that Prestage admitted that the Subcontract's change order process was regularly not followed, defendant cites twenty-three pages of its Statement of Additional Material Facts (Doc. 90, at 27 (citing Doc. 85-1, at 14–37 (¶¶ 35–78))). Defendant later cites the same material in support of its assertion of what the change order process actually looked like in practice, which could show a course of dealing different from the change order process outlined in the contract. (*Id.*, at 28 (same)). The Court "will not sort through a voluminous record in an effort to find support" for defendant's argument. *See Howard*, 363 F.3d at 800. Thus, the Court declines to parse through defendant's voluminous cited material and its corresponding record citations to see what documents might support each element of defendant's waiver argument. Instead, the Court will focus on defendant's arguments and the specific facts referenced therein.

Defendant shows evidence that a reasonable jury could interpret evidencing that plaintiff's course of dealing repeatedly disregarded the formal requirements of Paragraph 7.6. Specifically, the Court finds that a reasonable jury could find waiver of plaintiff's

46

seven-day substantiate in Paragraph 7.6 from its waiver of the seven-day substantiate in the change order process. *See Cent. Iowa Grading*, 392 N.W.2d at 860. Here, defendant points to several instances where plaintiff dispensed of timing and documentation requirements when adjusting payment under the Subcontract. Defendant asserts that Ms. Gannon's February 27, 2018 email about previous change orders shows that plaintiff itself did not follow the change order process. (Doc. 90, at 27 (citing Doc. 85-1, at 32–33 (citing Doc. 92-1, at 23–39))).[18] In the e-mail, Ms. Gannon states that certain change orders are denied because plaintiff did not receive pricing "within the (2) week timeframe requested, and [plaintiff] was only notified on 1/22 that there were costs. Some of these issuances are over 5 months old at this point. [Plaintiff] will not be held responsible for any costs associated for [defendant] to complete this work." (Doc. 92-1, at 23). But, defendant also cites to its Answers to Plaintiff's Interrogatories, in which defendant's president Ken Brown states that plaintiff nevertheless issued change orders that Ms. Gannon denied. (Doc. 90, at 27 (citing Doc. 85-1, at 32–33 (citing Doc. 92-1, at 18–19)))[19]. Further, in his deposition testimony, plaintiff's Director of Construction Daniel Boland stated that he enforced the seven-day substantiate requirement for neither change orders nor claims. (Doc. 90, at 27 (citing Doc. 85-1, at 15 (citing Doc. 92-4, at 76))). The Court notes that plaintiff states that claims fall under Paragraph 7.6. (Doc. 98, at 8 n.8).

Looking to the conduct of the parties, a reasonable jury could infer waiver from a course of dealing in one section of the Subcontract to another where the sections deal with similar subject matter and processes, as they do here. Indeed, based on Mr.

---

[18] Plaintiff objects to this evidence as violating LR 56(b)(3) because it does not preclude plaintiff's summary judgment. Here, the Court finds that it does. Thus, plaintiff's objection is overruled.

[19] Plaintiff objects to this evidence as violating LR 56(b)(3) because it does not preclude plaintiff's summary judgment. Here, the Court finds that it does. Thus, plaintiff's objection is overruled.

Boland's cited testimony, a reasonable jury could find waiver of Paragraph 7.6's terms without inference.

Thus, based on the evidence that defendant presents, an issue of material fact exists regarding whether plaintiff engaged in a course of dealing which repeatedly disregards the terms of the change order process such that a reasonable jury could infer that plaintiff waived those terms in Paragraph 7.6. *Central Iowa Grading*, 392 N.W.2d at 860.

But, although the Court does not weigh evidence at this stage, the Court finds this issue of material fact is not a genuine dispute for trial because there is not sufficient evidence to return a verdict for defendant based on the waiver of the seven-day substantiate requirement alone. *See Anderson*, 477 U.S. at 249 (1986).

The Subcontract's express language states that plaintiff will not be responsible for scaffolding. (Doc. 79-3, at 28). A reasonable jury would not interpret plaintiff's responsibilities contrary to the terms of a signed contract absent persuasive evidence that plaintiff made an exception.

And, defendant does not show that plaintiff went against this express language by consenting and promising to pay. For instance, defendant includes an email from Ms. Gannon to Rand, in which an earlier message from Rand complaining to Ms. Gannon about the scaffolding costs is included. Even if this were read to establish plaintiff's knowledge, which it arguably could be considering that Rand discusses doing scaffolding work on the project site for defendant—it does not show that plaintiff agreed to pay for the work. Instead, it supports that Ms. Gannon said she would try to "find out [defendant's] plan . . . for this installation." (Doc. 92-5, at 22). This is not a promise to pay for the scaffolding. Further, plaintiff shows evidence that it expressly stated it would not pay for the scaffolding before the scaffolding was installed. (Doc. 79-6, at 8, 10)).

48

Further, defendant's evidence points to discussions it had with Rand Construction—not plaintiff. Defendant implies that plaintiff should have known it would have to pay for scaffolding because of how plaintiff was compressing the schedule and actually did know because defendant and Rand Construction "had discussions with [plaintiff] . . . that 'if scaffolding needed to be built it needed to be charged to plaintiff.'" (*See* Doc. 90, at 21–29 (citing Doc. 85-1, at 36 (citing Doc. 92-5, at 21). But the email defendant cites is an email from defendant's employee to what appears to be other employees of defendant. (*See* Doc. 92-5, at 21). The address line of the email, memorializing to whom it was sent, is cut off. (*See id.*). Still, the partially-visible email addresses appear to correspond to defendant's company email address. (*See id.*). Thus, at best, this email informs the Court that defendant's employees discussed the fact that one employee talked to a Rand employee, and they agreed the scaffolding should be plaintiff's responsibility. This is not evidence of plaintiff's knowledge of, agreement to, or acquiescence in paying defendant's scaffolding costs. Defendant's other evidence is similarly unavailing. (*See* Doc. 85-1, at 15–16 (citing Doc. 92-1, at 44 (discussing delays but not mentioning scaffolding); *Id.*, at 61 (same); *Id.*, at 68 (same); Doc. 92-2, at 21 (same); *Id.*, at 96 (same))).

Thus, defendant does not show a genuine issue of material fact supporting its argument that plaintiff waived compliance with the Subcontract's terms and conditions in the change order process or in Paragraph 7.6.

The Court now addresses defendant's second argument that plaintiff's material breaches of the Subcontract make its change order terms and conditions unenforceable. Even if defendant shows that plaintiff materially breached the Subcontract, defendant does not show that it was excused from its contractual obligations when it chose to continue performance following the material breach.

49

Defendant's cited Iowa and Eighth Circuit case law does not support the proposition that a nonbreaching party is excused from its contractual obligations following the breaching party's material breach when the nonbreaching party continues performance.

Instead, defendant cites cases supporting that "fraudulent misrepresentation in the inducement to contract may be raised as a *defense* to a breach of contract claim." *Utica Mut. Ins. Co. v. Stockdale Agency*, 892 F. Supp. 1179, 1191 (N.D. Iowa 1995) (emphasis in original). Here, defendant asserts a breach of contract counterclaim against plaintiff. Plaintiff is not seeking a breach of contract claim against defendant, such that it may raise fraudulent misrepresentation as a defense. *See id.* (citing *Higgins v. Blue Cross of W. Iowa and South Dakota*, 319 N.W.2d 232, at 234, 236–7 (Iowa 1982) (discussing defendant's affirmative defense that if the jury found plaintiff made fraudulent misrepresentations on her healthcare application, then defendant would be excused from breaching her contract by failing to provide coverage) and *In re Lorimor's Estate*, 216 N.W.2d 349, 353 (Iowa 1974) (mentioning fraud as an affirmative defense in passing)).

Defendant's case law also does not support that the nonbreaching party is entitled to enforce the contract's terms after the material breach. Instead, it supports that the nonbreaching party is "justified in suspending its performance." *Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 693 (Iowa 1999). *See also Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 641 (Iowa 2000) ("[O]nce one party to a contract breaches the agreement, the other party is no longer obligated to continue performing his or her own contractual obligations.") (quotation marks omitted); *Vlieger v. Farm for Profit, Research, and Development, Inc.*, No. 04-876, 2005 WL 1963002, at *6 (Iowa Ct. App. Aug. 17, 2005) (affirming jury finding that nonbreaching party was excused from performance). The Court finds that these cases do not support the Texas cases defendant cites (*see* Doc. 90, at 22–23) and, being as those cases are not binding

50

authority, the Court declines to adopt them here. Thus, the Court finds that defendant does not show a genuine dispute of material fact that it remained bound to the terms of Paragraph 7.6.

For these reasons, the Court **grants** plaintiff's Motion for Summary Judgment as to damages for scaffolding costs under defendant's breach of contract counterclaim.

### d. Professional Negligence

The Court denies plaintiff's Motion on defendant's professional negligence counterclaim because defendant shows a genuine dispute of material fact.

To prove professional negligence, a plaintiff must show "[1] a duty of care was owed to him or her, [2] breach of that duty, and [3] damages caused by the breach of duty." *McGraw v. Wachovia Secs., L.L.C.*, 756 F. Supp. 2d 1053, 1070 (N.D. Iowa 2010). The relevant standard of care is "[t]he standard of the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." *Id.* (quoting *Humiston Grain Co. v. Rowley Interstate Transp. Co., Inc.*, 512 N.W.2d 573, 575 (Iowa 1994) (internal quotation marks omitted)).

### i. Arguments

Plaintiff argues that it is entitled to summary judgment on defendant's professional negligence counterclaim because the claim requires expert testimony and defendant's expert testimony does not suffice. (Doc. 81, at 27–29). Plaintiff argues that defendant's testimony from Scott Bowman does not support defendant's allegation that plaintiff failed to meet its standard of care as the "design-builder" in designing the expansion compensation system. (*Id.*, at 28–29). Regarding defendant's claim against plaintiff, plaintiff seems to assert that the relevant standard of care is that of a similarly-skilled and similarly-knowledgeable "design-build contractor." (*Id.*).

Defendant argues that plaintiff's Motion on defendant's professional negligence counterclaim fails because its relevant standard of care is that of a mechanical engineer—

51

not a design-build contractor, as plaintiff asserts. (Doc. 90, at 29–31). As a preliminary matter, defendant points out that A. Epstein and Sons' ("AES") expert witness, Dr. George Wandling, defines plaintiff as the entity whose architects and engineers performed the professional design services for the project. (*Id.*, at 29). Defendant argues that the Subcontract, however, identifies AES as performing the professional design services, and defendant's expert Scott Bowman bases his report on this assertion. (*Id.*). Defendant further argues that plaintiff's and AES's answers to defendant's counterclaims are inconsistent with Dr. Wandling's identification of plaintiff as providing professional design and engineering services for the project. (*Id.*, at 30). Regardless of who provided the services, defendant asserts that plaintiff is vicariously liable for the acts of its design consultants, including AES, and is thus liable for the engineering mistake whether it performed the engineering itself or its consultant AES did so. (*Id.*, at 30–31).

Plaintiff argues that the standard which defendant applies—that of an engineer—is without legal basis because defendant does not show that plaintiff is "the engineer of record." (Doc. 98, at 9). Further, regarding defendant's claim against AES[20] and defendant's theory that plaintiff is vicariously liable for AES's acts, plaintiff asserts that the relevant standard of care is that of an architect and that, in any event, vicarious liability would appropriately be addressed under defendant's breach of contract counterclaim. (*Id.*).

### ii.    *Applicable Law*

Whether a duty exists is a question of law for the court. *See McCormick v. Nikkey & Assocs., Inc.*, 819 N.W.2d 368, 371 (Iowa 2012). By extension, what standard of care applies to that duty is also a question of law. Whether a defendant breaches that

---

[20] The Court notes that AES did not move for summary judgment.

52

standard of care, however, is a question of fact for the jury. *See Eisenhauer ex rel. T.D. v. Henry County Health Center*, 935 N.W.2d 1, 9 (Iowa 2019).

"Unless a professional's lack of care is so obvious as to be within the comprehension of a layperson," the plaintiff must ordinarily establish the standard of care and its breach through expert testimony. *Id.* (quoting *Humiston Grain*, 512 N.W.2d at 575)). Whether expert testimony is required, courts look to the nature of the breach and determine whether it is a simple and straightforward act, or whether it was complex and rooted in professional insight or discretion. *See, e.g.*, *Karnes v. Keffer Overton Assocs., Inc.*, No. 00-0191, 2001 WL 1443512, at *2 (Iowa Ct. App. Nov. 16, 2001) (expert testimony properly required to determine whether a reasonable engineer would anticipate depth of construction workers' notching when designing staircase that collapsed); *Humiston Grain*, 512 N.W.2d at 575 (collecting insurance cases requiring no expert testimony when relevant acts were simple tasks such as failing to produce coverage or submit forms, and requiring expert testimony when acts were complex tasks such as using one's professional judgment regarding affirmative duties and ensuring that the insured party has proper coverage); *Sinkey v. Surgical Assocs.*, 186 N.W.2d 658, 661–62 (Iowa 1971) (expert testimony required to assess doctor's diagnosis process because "[t]he layman would have no conception of the complex nature of the problem"); *Wheatley v. Heideman*, 102 N.W.2d 343 (Iowa 1960) (no expert testimony required where defendant failed to detect injury to plaintiff's eye visible to the naked eye). Other authority, although not binding, supports the same conclusion. ARCHITECT & ENGINEER LIABILITY § 17:06 *Use of Experts* ("If the negligence is flagrant and obvious, expert testimony may be unnecessary.").

Plaintiff breached the applicable standard of care by not including load restrictions for the building structure in the specifications and by not coordinating the mechanical engineering with the architectural design and structural engineering. (Doc. 43, at 49).

53

In an action against an architect or engineer for negligence in the preparation of plans or specifications, the plaintiff must establish that the architect or engineer owed the plaintiff a duty to use care. The duty of care extends to any person who foreseeably and with reasonable certainty may be injured or harmed as a result of the architect or engineer's failure to exercise reasonable care in the preparation of plans and specifications. *See John T. Jones Const. Co. v. Hoot General Const.*, 543 F. Supp. 2d 982, 1009 (S.D. Iowa 2008) (applying Iowa law); ERIC M. LARSSON, 41 CAUSES OF ACTION 2d 105 § 4 (2009).

Here, under any standard of care, the relevant acts require expert testimony. Without deciding at this stage which standard of care applies, the Court finds that expert testimony would be required. Defendant alleged that plaintiff "breached the applicable standard of care by not including load restrictions for the building structure in the specifications and by not coordinating the mechanical engineering with the architectural design and structural engineering." (Doc. 43, at 49). The Court then turns to whether Mr. Bowman's testimony (Docs. 92-5, at 201–208; 92-6, at 1–21) satisfies this.

### iii.   Application

Based on its argument, to meet its initial burden, plaintiff must show: (1) a standard of care that requires expert testimony applies, and (2) defendant does not provide the required expert testimony. Here, the parties do not dispute that plaintiff owed defendant a duty.[21] *See McGraw*, 756 F. Supp. 2d at 1070.

Instead, the parties dispute what kind of duty plaintiff owed defendant. *See id.* Because duty is a question of law, the Court examines both parties' arguments. *McCormick*, 819 N.W.2d at 371. In its First Amended Counterclaims, defendant asserts

---

[21] Plaintiff does not argue here that the Court should grant summary judgment because plaintiff did not owe defendant a duty. (*See* Doc. 81, at 27–29).

Case 1:19-cv-00106-CJW-KEM   Document 132   Filed 02/09/22   Page 54 of 60

that plaintiff was professionally negligent because it breached "the applicable standard of care for a design professional." (Doc. 43, at 49). Specifically, defendant claims plaintiff failed to (1) "includ[e] load restrictions for the building structure in the specifications" and (2) "coordinat[e] the mechanical engineering with the architectural design and structural engineering." (*Id.*). Thus, defendant's counterclaim is based on the execution of the project specifications and coordination between various subsets of the project design.

The Subcontract identifies plaintiff as "both the 'Design-Builder' and the 'Contractor' for the Project." (Doc. 79-3, at 1).[22] This identification supports that plaintiff owed defendant a duty either as a "design-builder" or a "contractor." In its Response to Defendant's Statement of Additional Material Facts, plaintiff admits that it "utilizes [AES] . . . to develop design drawings and specifications." (Doc. 99, at 81–82). Plaintiff appears to assert that its role was the project's "design-builder," and therefore it owed defendant the duty of care of a reasonable design-build professional. (*See* Doc. 81, at 28; 98, at 8–9).

Defendant asserts that plaintiff owed a duty to perform their services with the skill, care, and learning of "other design professionals and engineers performing similar engineering services." (Doc. 43, at 49). Plaintiff asserts that the trade is of "design-builders." (Doc. 81, at 28). Defendant asserts in resistance that the trade was not limited to being a design-builder but also included being an engineer. (Doc. 90, at 29–31). Plaintiff then characterizes AES as an architect, which would be the relevant trade under a vicarious liability theory. (Doc. 98, at 9).

At this stage, however, the Court need not decide which trade is at issue here. All of these trades, however, are professional trades. No matter the label of the trade,

---

[22] The Subcontract identifies AES as the Architect. (Doc. 79-3, at 1).

plaintiff is held to the standard of "the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." *Kastler v. Iowa Methodist Hosp.*, 193 N.W.2d 98, 101 (Iowa 1971) (quotation omitted).[23] Further, no matter the label, the factfinder must decide defendant's allegations that plaintiff failed to (1) "includ[e] load restrictions for the building structure in the specifications" and (2) "coordinat[e] the mechanical engineering with the architectural design and structural engineering." (Doc. 43, at 49).

The Court turns to the question of whether expert testimony is required. Again, admission of expert testimony is appropriate where a layperson could not determine whether the standard of care was met in a complex case. *See Welte*, 482 N.W.2d at 440–41; *John T. Jones Const.*, 543 F. Supp. 2d at 1009–10, *aff'd sub nom. John T. Jones Const. Co. v. Hoot Gen. Const. Co.*, 613 F.3d 778 (8th Cir. 2010). No matter the label of the profession, the Court does not find that an ordinary jury could assess whether plaintiff breached the standard of care of a professional by failing to include load restrictions for the building structure in the specifications or failing to coordinate the mechanical engineering with the architectural design and structural engineering. These questions involve an understanding of technical project specifications and the extent of coordination between various types of engineering work that is not within the purview of a typical jury.

---

[23] "An architect may be held liable for negligence in failing to exercise the ordinary skill of his profession[.]" *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 913 (Iowa 1975) (quotation omitted). *Fox v. Stanley J. How & Assocs., Inc.*, 309 N.W.2d 520, 523 (Iowa Ct. App. 1981) (quotation omitted). "In addition, the Engineer had the duty of care and competence commensurate with the standards of his profession[.]" *Peter Kiewit Sons' Co. v. Iowa S. Utilities Co.*, 355 F. Supp. 376, 394 (S.D. Iowa 1973) (citing *Ryan v. Kanne*, 170 N.W.2d 395 (Iowa 1969); RESTATEMENT (SECOND) TORTS § 552.

Having decided that defendant must present expert testimony, the Court turns to the question of whether defendant has shown such evidence of whether plaintiff breached the standard of care of a professional by failing to include load restrictions for the building structure in the specifications or failing to coordinate the mechanical engineering with the architectural design and structural engineering. Plaintiff argues that defendant does not provide the required expert testimony because Mr. Bowman expressly states that he was "not offering any opinions regarding the standard of care applicable to design-build contractors such as [plaintiff]." (Doc. 81, at 28–29 (citing Doc. 79-6, at 76)). Thus, plaintiff meets its initial burden to show that defendant did not offer evidence to show that plaintiff's conduct violated the applicable standard of care.

However, defendant answers this argument. Defendant discusses plaintiff's expert witness Dr. Wandling, who asserted that plaintiff "developed design drawings and specifications for the pork processing plant" which "addressed the civil, structural, mechanical, electrical, plumbing, and fire protection aspects of the plant." (Doc. 90, at 29 (citing Doc. 85-1, at 37–38 (citing Doc. 92-5, at 29))). Defendant notes that the Subcontract identifies AES as providing the "professional design services" for the project. (Doc. 90, at 29 (citing Doc. 79-3, at 1)). Defendant argues that Mr. Bowman's report expresses "the opinion that the mechanical engineering fell below the standard of care," regardless of who performed it. (Doc. 90, at 29–30 (citing Docs. 92-5, at 201–208; 92-6, at 1–21)). Mr. Bowman's report indicates that a pre-determined "maximum load constraint was not disclosed in the contract documents and required supplemental steel to reinforce the building structure and engineering re-design to comply." (Doc. 92-5, at 202). The report goes on to state that the standard of care for a designer "would be to provide the constraints the contractor is required to work within" and that "[n]ot providing the load constraint in the specifications is an omission on the part of AES in their role as the engineer of record of the project." (Doc. 92-6, at 8). As the report

57

noted earlier, the term Architect includes "all designers including engineers" because the contract "is a design-build contract." (*Id.*).

Thus, a genuine dispute of material fact exists as to whether plaintiff complied with any applicable professional standard of care. For these reasons, the Court **denies** plaintiff's Motion for Summary Judgment on defendant's professional negligence counterclaim.

In sum, the Court denies plaintiff's Motion as to defendant's fraud, negligent misrepresentation, and professional negligence counterclaims, and grants plaintiff's Motion as to damages for scaffolding on defendant's breach of contract counterclaim.

## IV. *DEFENDANT'S MOTION ON ORDER OF TRIAL*

Having resolved plaintiff's Partial Motion for Summary Judgment, the Court now turns to defendant's Motion on the Order of Trial. (Doc. 77). The parties' positions on the order of trial are relatively straightforward. Defendant moves for (Doc. 77-1, at 4–8), and plaintiff consents to a trial order wherein defendant tries its counterclaims against plaintiff before a jury, prior to the Court resolving plaintiff's declaratory judgment action. (Doc. 82, at 1–2 ("For purposes of trial order, [plaintiff] does not object to [defendant] advancing its [counter]claims first. The ordering of the trial is in the sound discretion of the trial court.")). For the following reasons, the Court grants defendant's Motion.

### A. *Applicable Law*

A party to an actual controversy may, upon proper application, seek a declaratory judgment from a district court under the Declaratory Judgment Act, Title 28, United States Code, Section 2201. Under the Declaratory Judgment Act, the court "declare[s] the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Such actions "are neither legal nor equitable." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988). Declaratory judgments "have the force and effect of a final

58

judgment or decree." 28 U.S.C. § 2201. But the Declaratory Judgment Act, "while allowing prospective defendants to sue to establish their nonliability, specifically preserves the right to jury trial for both parties." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959). The court has discretion to choose whether to hear the declaratory judgment action, and when to do so—including whether it is proper to hear the action before or after claims that will be resolved at trial. 28 U.S.C. § 2201; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288–89 (1995).

When a party uses its Seventh Amendment right to demand a jury trial, that right must "be preserved." U.S. CONST. Amend. VII; *see also* FED. R. CIV. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate."). When a party makes a jury demand on an issue, a trial must be held to resolve that issue. FED. R. CIV. P. 39(a) (providing the only exceptions to this rule are when the parties or their attorneys agree otherwise and when the court finds there is no federal right to a jury trial). Thus, if a party's Seventh Amendment right would be violated because a court would necessarily decide a question common to a claim before the jury when deciding a declaratory judgment action, the court may use its discretion to order the declaratory judgment stayed pending the jury trial. *See* FED. R. CIV. P. 42(b) (providing that the court may order separate trials to avoid prejudice, but must preserve any federal right to a jury trial in so doing).

### B.    *Arguments and Analysis*

Here, defendant asserted its Seventh Amendment right to a jury trial on all its counterclaims (Doc. 43), while plaintiff did not assert its right to a jury trial on its declaratory judgment. (Doc. 1). Additionally, the Court agrees with the parties that the counterclaims and declaratory judgment action are founded on common issues. Resolving plaintiff's declaratory judgment before defendant's counterclaims would therefore be a

59

violation of defendant's Seventh Amendment right. For these reasons, the Court grants defendant's Motion for Order of Trial.

The Court thus does not reach defendant's request in the alternative that it realign the parties. (Doc. 77-1, at 9).

The order of trial will proceed as follows. First, defendant's counterclaims will be tried in a jury trial. After the jury trial, the Court will issue an order on plaintiff's declaratory judgment. Because defendant bears the burden of proof, it will present its case first and provide rebuttal. Thus, defendant will be referred to as "plaintiff" at trial, and defendant for purposes of plaintiff's declaratory judgment. Plaintiff will be referred to as "defendant" at trial, and plaintiff for purposes of its declaratory judgment.

## V.   CONCLUSION

For the reasons set forth above, plaintiff's Motion to Strike (Doc. 95) is **denied**, plaintiff's Partial Motion for Summary Judgment (Doc. 79) is **granted in part and denied in part**, and defendant's Motion for Order of Trial (Doc. 77) is **granted**.

**IT IS SO ORDERED** this 9th day of February, 2022.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

60